### PEARSON v. COUNTY OF SPARTANBURG.

1. HIGHWAYS—BRIDGES—DAMAGES—EVIDENCE.—In an action under sec. 1169, Rev. Stat., against county for negligence in keeping a bridge in repair, and damages for an engine falling through, testimony as to loss of time by plaintiff and that of employees is inadmissible, because not *actual* damages.

2. EVIDENCE.—The admission of evidence upon a fact not in issue is harmless error.

3. IBID.—HIGHWAY—BRIDGES—DAMAGES—CONTRIBUTORY NEGLIGENCE.—In an action against county under Rev. Stat. 1169, for injury to engine in falling through bridge, admissions of county superintendent to plaintiff tending to show condition of bridge is admissible to show due diligence by plaintiff, and want of contributory negligence.

4. IBID.—IBID.—IBID.—IBID.—In an action against a county, under Rev. Stat. 1169, for damages to engine in falling through a bridge, it is proper to show previous condition of bridge.

5. AN EXCEPTION which does not state upon what ground testimony is objectionable, will not be considered.

6. CHARGE.—The law applicable to an action under a statute may be correctly charged by reading the statute, and the party not making specific requests cannot complain.

7. EXCEPTIONS containing quotations from charge, and not indicating in what particular such quotations are erroneous, will not be considered.          •          ᾽

Before WATTS, J., Spartanburg, March, 1897.   Reversed.

Action by J. M. Pearson *et al.* against the county of Spartanburg on the following complaint:

1. That at the times hereinafter mentioned, the plaintiffs were, and are now, partners in the business of operating a saw mill, under the firm name of J. M. & G. W. Pearson. 2. That at the time hereinafter mentioned, the defendant was, and is now, a body politic and corporate, under and

by virtue of the laws of this State, and as such was, and is, entitled to sue and be sued. 3. That, among other things, at and during the said times, it was the duty of the said county to construct, out of suitable, strong, and sound material, and to keep in good repair, its highways and causeways, bridges and abutments thereto, so that the citizens of said county and the public generally could at all times travel over and along and across said highways, causeways, and bridges without danger to their persons and property. 4. That the said defendant, disregarding its duty in the premises, failed to properly construct and keep in proper repair a certain bridge and the abutments thereto, within the boundaries of said county, to wit: the bridge known as Tanner Bridge, across Middle Tyger River, near the residence of W. J. Means; but, on the contrary, the said bridge and approaches were not properly constructed, in that the timbers thereof were entirely too light—the said timbers being mortised or cut out in such a way as to diminish their strength and make them utterly unfit, both by reason of said cutting and size and the lightness thereof, to be used in said bridge. And by reason of said defective material and the defective construction of said bridge, and by reason, further, of the utter want and failure of the defendant to replace said defective timbers with better, stronger, and newer timbers, and to keep the said bridge in good repair, the said bridge was, on the 5th day of September, 1895, in a very unsafe and defective condition. 5. That on the said 5th day of September, 1895, while the plaintiffs were driving a traction or road engine belonging to them over the said bridge, the said bridge gave way and fell in, throwing the property of the plaintiffs a considerable distance, and greatly injuring and damaging it to such an extent as almost to destroy its value. And by reason of the said negligent conduct of the said defendant, the said property of plaintiffs was greatly injured and damaged, making extensive repairs necessary, and preventing the use of said engine, teams, and employees of the plaintiffs, and utterly

destroying their said business and the revenue they would have received in the use of their said engine, teams, and employees for a considerable time—all of which was to their damage in the sum of $1,000.  6.  That the said damage done to plaintiffs was through and on account of defects in and on account of the negligent want of repair of the bridge hereinbefore referred to, and such damage was not in any way brought about by their own acts, by overloading or otherwise, and they in no way negligently contributed thereto.  That such defects were occasioned by the neglect and mismanagement of the defendant.  7.  That there is now due and owing from the defendant to the plaintiffs the said sum of $1,000 damages, done to them through and by reason of the negligent acts of the defendant, hereinbefore set out.  Wherefore, plaintiffs demand judgment against the defendant for the said sum of $1,000, together with the costs and disbursements of this action.

Judgment for plaintiffs.  Defendant appeals.

*Messrs. Hydrick & Wilson,* for appellant.  (No citations.)

*Messrs. Bomar & Simpson,* contra.  (No printed argument.)

March 14, 1898.  The opinion of the Court was delivered by MR. JUSTICE GARY.  The plaintiff herein brought this action to recover damages, alleged to have been sustained by the breaking in of a bridge, while their traction engine was crossing it.  The complaint will be set out in the report of the case.  The defendant denied all the allegations of the complaint except those contained in paragraphs 1 and 2 thereof.  The case was tried before his Honor, Judge Watts, and a jury, at the March, 1897, term of the Court for Spartanburg County.  The jury rendered a verdict in favor of the plaintiffs for $312.

The defendant appealed upon several exceptions, the first of which is as follows: I. "In holding that the loss of time

by the plaintiffs, and the loss of time of hands employed
and paid by them, under contract, were elements of damage
for which plaintiffs might recover in this action, and in
admitting testimony to show damages in those par-
ticulars." This action was brought under section
1169 of the Rev. Stat., which is as follows: "Any
person who shall receive bodily injury, or damage in his
person or property, through a defect or in the negligent re-
pair of a highway, causeway or bridge, may recover, in an
action against the county, the amount of actual damages
sustained by him by reason thereof: *Provided*, Such person
has not in any way brought about such injury or damages
by his own act, or negligently contributed thereto. If such
defect in any road, causeway or bridge existed before such
injury or damage occurred, such damage shall not be reco-
vered by the person so injured, if his load exceeded the
ordinary weight: *Provided, further*, That such county shall
not be liable unless such defect was occasioned by its neglect
or mismanagement." The allegations as to damages are
thus stated in the fifth paragraph of the complaint, to wit:
"That on the said 5th day of September, 1895, while the
plaintiffs were driving a traction or road engine, belonging
to them, over the said bridge, the said bridge gave way and
fell in, throwing the property of the plaintiffs a consider-
able distance, and greatly injuring and damaging it to such
an extent as almost to destroy its value. And by reason of
the said negligent conduct of the said defendant, the said
property of plaintiffs was greatly injured and damaged,
making extensive repairs necessary, and preventing the use
of said engine, team, and employees of the plaintiffs, and
utterly destroying their said business, and the revenue they
would have received in the use of their said engine, teams
and employees, for a considerable time—all of which was
to their damage in the sum of $1,000.

When objection was made to the testimony tending to
prove the elements of damage mentioned in this exception,
his Honor ruled that the plaintiffs had the right to prove

any actual damages, and admitted the testimony. The question, therefore, to be considered is, whether the elements of damage mentioned in the exception fall under the head of *actual* damages. Damages to property, in the general acceptation of the term, mean the compensation which the law allows a person for an injury sustained as the immediate, direct, and proximate result of a wrongful act. Consequential or special damages are those that flow naturally, but indirectly, from the wrongful act. Damages that, in the ordinary course of things, are not reasonably to be expected to arise from the injurious act, are regarded as remote and cannot be recovered. The damages mentioned in the exceptions are not such as might reasonably have been expected, in the ordinary course of things, to flow from the alleged wrongful act. The Circuit Judge was, therefore, in error when he admitted testimony to sustain such damages.

There is, however, another reason why the testimony should not have been admitted. The statute limits the amount of the recovery to the *actual* damages sustained through the injurious act. The distinction between damages, in the general acceptation of the term, and consequential or special damages, is so marked that the latter cannot be recovered unless the facts relied upon to sustain them are specifically alleged. *Loeb* v. *Mann*, 39 S. C., 465; *Alston* v. *Huggins*, 2 Tread., 688. As a general rule, in torts for injury to property, exemplary or punitive damages are not allowed. The plaintiff can only recover such damages for the injury sustained as are the immediate, direct and proximate result of the wrongful act. Mr. Sedgwick, in his work on Damages, star page 82, says: "But, as a general rule, it may be said, that in cases of tort, without aggravation, where the conduct of the defendant cannot be considered so morally wrong, or grossly negligent, as to give a right to exemplary or vindictive damages, the extent of remuneration is restricted, according to the principles which we have been considering, to the immediate

consequence of the illegal act." Again, the same author, at star page 569, in speaking of the word "just," as applied to damages, which is more comprehensive than the word "actual," says: "In many of the States, and particularly in New England, laws have been passed to compel the towns to keep their highways and bridges in repair, and requiring them to make compensation for any injury resulting from their neglect. In Connecticut, it has been decided, on a statute of this kind, that towns liable to pay *just* damages for defects in bridges or roads, are not liable for consequential damages, such as loss of service," &c. There are cases in our reports apparently sustaining the doctrine that when personal property is destroyed, consequential damages are not recoverable, but that the true amount of the recovery should be the actual value of the property. Of course, this doctrine would have no application to actions sounding in exemplary or punitive damages. In the case of *Bailey* v. *Jeffords*, 2 Speer, 271, the Court says: "In the case of *Richardson* v. *Dukes*, 4 McCord, 156, which was trespass for shooting a negro, it was adjudged, that even in actions of tort, as in the case before the Court, where property is destroyed, its value furnishes the measure of damages, from which, if the jury materially depart, the Court will order a new trial, and accordingly a new trial was ordered in that case. This rule has been recognized and acted upon in several other cases, and is essential to the peace, order, and justice of civil government. In torts other than for the destruction of property, no specific measure of damages can be laid down." * * * The intention of our statute, hereinbefore mentioned, was to allow recovery for only one kind of damages, and to limit the recovery to damages to the property itself, but not to allow consequential damages. The first exception is sustained.

The second exception complains of error as follows: II. "In admitting evidence to show that plaintiff's engine had gone safely over other bridges in Spartanburg and

other counties." Even if there was error, it was harmless, and this exception is overruled.

The third exception complains of error as follows: III. "In allowing one of the plaintiffs, J. M. Pearson, to narrate on the witness stand a conversation between himself and J. D. Leonard, then the county supervisor, relative to the condition of the bridges along the route likely to be traveled by plaintiffs with their engine." Waiving the objection to this exception on the ground that it is too general for consideration, still it cannot be sustained. The testimony was competent as tending to show due diligence on the part of the plaintiffs, and that they were not guilty of contributory negligence.

The fourth exception complains of error as follows: IV. "In allowing one of the plaintiffs, J. M. Pearson, to testify that J. D. Leonard, then the county supervisor, had told him to go ahead, get the engine out of the river, fix it up, and make out their account and present it to the board of county commissioners, and in allowing said witness to further testify that J. D. Leonard had told him not to make out his account too heavy, because some of them (meaning some of the board of county commissioners) would kick on it, and that that was why he made it out as he did." This exception becomes immaterial under the view that the plaintiffs are limited in their recovery to such damages as resulted immediately, directly, and proximately from the alleged wrongful act of the defendant.

The fifth exception complains of error as follows: V. "In allowing one of the plaintiffs, J. M. Pearson, to testify that J. D. Leonard, the then county supervisor, knowing that he was going to move his engine over some of them, had told him 'that the covered bridges were all right,' and that the bridge through which the engine fell was a covered bridge." This exception is disposed of by what was said in considering the third exception.

The sixth exception complains of error as follows: VI. "In allowing the witness, James Darwin, to testify why the

plaintiffs did not quit paying him after his engine had fallen into the river; and in allowing said witness to testify as to how long plaintiffs had agreed to employ him." This exception becomes immaterial after what this Court has said in considering the first exception.

The seventh exception complains of error as follows: VII. "In allowing the witness, Curtis Kelly, to testify that, in hauling a certain engine over this bridge which fell in with plaintiffs' engine, he heard the timbers of the bridge crack." The testimony was competent, as tending to show that the bridge was defective, and the exception is overruled.

The eighth exception is as follows: VIII. "In allowing the plaintiffs to introduce testimony to prove, as an element of damages for which they might recover in this action, that they had made a board bill of some thirty-odd dollars with Capt. Means, and that they still owed that bill." This exception is disposed of by what was said in considering the first exception.

The ninth exception is as follows: IX. "In allowing the plaintiff, J. M. Pearson, to testify as follows: 'After the engine fell into the river, I asked Mr. Leonard and Mr. Workman both about it, and we felt pretty safe in the county going to make up everything all right enough.'" The exception does not state on what ground the testimony was objectionable; it was, however, immaterial and harmless.

The tenth exception is as follows: "In allowing the witness, W. Butler Thornton, to testify, in reply, what in his opinion would be the proper sizes of the timbers to be used in building a bridge; what sizes he commonly used; that he did not cut under them, and why." The ground of objection to this testimony is not stated in the exception, and it will not be considered.

The eleventh exception is as follows: XI. "In allowing one of the plaintiffs, J. M. Pearson, to testify, in reply, that he had not heard anything that would go to show that the

bridge was at all unsafe, and that if he had, he would not have gone over it." The ground of objection to this testimony is not stated, and it will not be considered.

The twelfth exception is as follows: XII. "In not charging the jury: (a) That the burden was upon the plaintiffs to prove, by the preponderance of the evidence, not only that they were damaged, but that such damages were caused by reason of some defect in the bridge, due to negligence or mismanagement on the part of the defendant; and (b) that the burden was also upon the plaintiffs to prove by the preponderance of the evidence that they did not, in any way, bring about such injury or damage by their own act or negligently contribute thereto, and that their load did not exceed the ordinary weight." His Honor substantially charged the law applicable to the case, even reading to the jury the statute under which the action was brought. If the appellant desired the Judge to charge more specifically, it was his duty to prepare requests to that effect. A Judge is not bound to charge all the law applicable to the case, but only substantially that which is applicable.

The next exception consists of more than a page and a half of quotations from his Honor's charge, divided into sections running from "(a)" to "(f)." No specific error of law is alleged, and the exception will not be considered. It is useless for exceptions to be presented in that form, as they will not be considered by this Court.

It is the judgment of this Court that the judgment of the Circuit Court be reversed, and the case remanded for a new trial