HENRY SONNEBORN & CO. v. SOUTHERN RY.

1. Testimony De Bene Esse.—A Notice to take testimony at No. 21 Bank of Baltimore building, is complied with by taking the deposition at office of S. & Co., No. 21 Bank of Baltimore building, especially where objector was present by representative.

2. Ibid.—Signature of Witness to evidence *de bene esse* is properly identified by certificate of notary that he had sworn and examined the witness.

3. Evidence—Books of Account—Refreshing Memory.—A person inspecting articles before charged and who superintended the charging on the books of original entry, can refresh his memory as to value of articles by inspection of books.

4. Damages—Special—Punitive.—Loss in value of suits of clothing by means of injury to the coats, is special damages, but under issue of wilful negligence it is proper to show special and even remote damages.

5. Evidence—Expert.—A person having experience in handling custom-made clothing may testify as an expert to the damage thereto by rain, although he has never seen the clothes.

6. Ibid.—Negligence.—Reason for failure to exercise proper precaution in the past does not tend to excuse or negative negligence at the present.

7. Negligence—Act of God.—A Common Carrier is excused for injury to goods by the act of God only when such act is the entire cause. "Act of God" defined.

Before Watts, J., Fairfield, February term, 1902. Affirmed.

Action by Henry Sonneborn & Co. against Southern Railway Co. From judgment for plaintiffs, defendant appeals.

*Mr. C. P. Sanders,* for appellant, cites: *Not having been pleaded it was error to permit evidence of loss to whole suits:* 5 Ency., 1 ed., 50; 5 Ency. P. & P., 719 to 721; 1 Suth. on Dam., 2 ed., sec. 14; 3 Brev., 185; 40 S. C., 528; 39 S. C., 468; 31 S. C., 149; 3 Strob., 373; 51 S. C., 484; 45 S. C., 282; 57 S. C., 433. *Evidence as to effect on canvas in coats being wet, was error:* 1 Thom. on Trials, secs. 545, 604; 19

S. C., 66.   *As to loss by act of God:* 1 Ency., 1 ed., 174; 1 Ency., 2 ed., 586; 7 Rich., 410; 2 Bail., 162, 423.

*Mr. J. E. McDonald,* contra, cites: *Requirements of statute as to deposition, substantially complied with:* 30 S. C., 157, 615; 50 S. C., 3; 60 S. C., 207.   *Witness can refresh memory from book:* 46 S. C., 110.   *Not error to refuse request already covered:* 60 S. C., 169.   *"Act of God" to excuse defendant must be sole cause of damage:* 2 Jagg. on Torts, 1061-3; 166, U. S., 386; 114 Fed. R., 472; 1 Smith's Lead. Cas., 8 ed., 199; 1 Ency., 585; 2 Harp., 262.   *And must be pleaded:* 88 N. W., 588; 26 S. C., 267; 29 S. C., 101.

March 31, 1903.   The opinion of the Court was delivered by

MR. JUSTICE JONES.   The appeal in this case is from a judgment on verdict in favor of plaintiffs in an action for damages alleged to have been caused by defendant's negligent and wanton conduct in putting off its train in Winnsboro, S. C., ten trunks of sample clothing belonging to plaintiffs, during a severe rain and without any protection, whereby the samples became wet and injured.

The first exception assigns error in admitting the deposition of Moses S. Sonneborn, the objections thereto being (1) That it was taken in the office of Shiver, Bartlett & Co., instead of Thos. K. Le Brou, pursuant to the notice; (2) that it appeared that the signature of the deposition had not been witnessed by the notary, there being no identification of the signature as being the true signature of the witness examined.   These objections were properly overruled.   The notice was that the deposition could be taken before Thomas K. Le Brou, a notary public, at his office, No. 21 Bank of Baltimore building, in the city of Baltimore, and the certificate states that it was taken by Thomas K. Le Brou, a notary public, at the office of Shiver, Bartlett & Co., No. 21 Bank of Baltimore building, Balti-

more, Maryland.    It thus appears that the deposition was taken at the place noticed, and the inference is that the notary mentioned also had his office at that place.    Besides, this defendant was present by representative at the taking of the deposition.

With reference to the second objection as to the identification of the signature of the deponent, such identification sufficiently appears by the certificate of the notary to the effect that he had sworn and examined the witness, Moses S. Sonneborn, and that the questions and answers were contained in the pages constituting the deposition.    The statute, sec. 2881, *et seq.,* Code, 1902, relating to such depositions, does not require any other identification of the deponent's signature.    The signature purporting to be that of Moses S. Sonneborn and attached to the deposition is presumptively the signature of the witness, Moses S. Sonneborn, who was sworn and examined by the officer certifying the deposition.

The second exception alleges error in allowing question No. 28 of the deposition of the witness, Sonneborn, and the answer thereto, when it appeared that the witness had not made the entries in the book, nor could he testify to the fact contained in the entry in the books from his own knowledge.    Interrogatory No. 28 and the ones immediately preceding are as follows: "26 Q. Have you produced the book of original entry containing the list of samples taken by Mr. Browning on said trip?  A. I have done so, and this is the book.    27 Q. Is that the book of original entry?  A. It is. 28 Q. According to the book you hold in your hand, what is the exact value of the samples taken by Mr. Browning on said trip?  A. The exact value of the overcoats was $493.62; the exact value of the full suits, of which Mr. Browning carried the sample coats, was $2,341.24, and the sample coats which he carried cost more than half the cost of the suits; but in case of loss or damage to the coats, it also depreciates the cost of the pants and vests."    The witness had previously testified that he saw

the samples furnished to Mr. Browning, the traveling agent, and that he superintended the charging of the same at the time they were furnished.   It thus appears that the grounds of objection are not based upon the facts.   The witness having seen the samples furnished to the agent and superintending the charging the same on the books kept for that purpose, could certainly refresh his memory as to the value of the samples by an inspection of the books.   *State* v. *Collins,* 15 S. C., 376, and authorities therein mentioned.

The third, fourth, fifth and sixth exceptions charge error in allowing the witness, Browning, to testify over objection as to loss or damage with respect to the salable value of the whole suits by reason of the injury to the coats.   The trunks contained overcoats, and coats forming parts of full suits, but the vests and pants of such suits were in Baltimore at the time of the injury.   The objection urged to this testimony is that it is an attempt to prove special damages not alleged in the complaint.   The fifth allegation of the complaint is as follows: "5. That upon the arrival of the defendant's said cars at the town of Winnsboro, on which the plaintiffs' salesman and agent was a passenger, as aforesaid, the defendant, by its agents, servants and employees, recklessly, carelessly, negligently, wilfully, wantonly and in utter and wilful disregard of the rights of the plaintiffs, put off the ten said trunks of clothing samples upon the platform of its passenger station at the town of Winnsboro during a very hard down pour of rain; and then and there recklessly, carelessly, wilfully and wantonly neglected, failed and refused to move said trunks out of the rain and put them in its baggage room or other place of shelter, or to cover the same with canvas cloth, as was its duty in the circumstances, in order that the samples in said trunks might be kept dry and uninjured by the rain; but, on the contrary, the defendant carelessly, negligently, recklessly, wilfully and wantonly placed and turned said trunks with their ends upward instead of placing them down flat—in which first position the rain could more easily run into said

trunks and wet contents thereof—and thus allowed the said
ten trunks of samples belonging to plaintiffs as aforesaid to
remain unprotected in the rain and weather for the space of
one hour, whereby the said samples of clothing in said trunks
were thoroughly wet and saturated with the rain water, and
were thereby damaged and injured to the amount of one
thousand ($1,000) dollars." In the case of *Lipscomb* v.
*Tanner,* 31 S. C., 52, 9 S. E., 733, the Court said: "It is not
always easy to determine whether damage is or is not special.
The cases upon the subject are full of nice distinctions. We
have seen no clearer definition or description of it than the
following: 'The general allegation of damages will suffice to
let in proof and to warrant recovery of all such damages as
naturally and necessarily result from the unlawful act com-
plained of; the law implies such damages. But where dam-
ages do not necessarily result from the act complained of,
and consequently are not implied by law, the plaintiff must
state the particular damage sustained in order to introduce
testimony in regard to it; the rule is to avoid surprise,' &c.
See 5 Am. & Eng. Ency. Law, 49, and very full notes."
Such is the rule established by the decisions in this State.
*Alston* v. *Huggins,* 3 Brev., 185; *Rowand* v. *Bellinger,* 3
Strob., 375; *Loeb* v. *Mann,* 39 S. C., 468, 18 S. E., 1; *Mood*
v. *Telegraph Co.,* 40 S. C., 528, 19 S. E., 67; *Pearson* v.
*Spartanburg Co.,* 51 S. C., 484, 29 S. E., 193. The injury
alleged in the complaint was the negligent and wanton ex-
posure of the trunks to the rain, whereby *the samples of
clothing in the trunks* were wet and saturated with rain
water and damaged. Considered with reference to the dis-
tinction between general damages and special or consequen-
tial damages, we think evidence as to damage resulting to
the whole suit, parts of which were not in the trunk, would
relate to special damages. With respect to actual, or com-
pensatory, or general damages, the highest measure of dam-
ages that could be awarded under the complaint would be the
depreciation in the value of the coats alone, through the
negligence of defendant. But the complaint alleged also

that the conduct of the defendant which caused the injury was wanton, and demanded punitive damages. In view of this, it was competent for plaintiffs to show not only general but special and even remote damages resulting to them from defendant's act, with a view to enable the jury to award proper punitive damages under all the circumstances of the case, in the event they should conclude that defendant's conduct was wanton. *Pickens* v. *R. R. Co.,* 54 S. C., 505.

The seventh exception complains of error in allowing the witnesses, Owens and Kitchens, to testify as to the effect generally upon custom-made clothes by reason of the canvas in the lining of the coats getting wet, when these witnesses had not seen the coats in question. The exception is not sustained. Previous to the testimony of the witnesses it had been testified that the clothes in question were custom-made, and that such clothes generally have a buckrum or canvas lining between the inner lining and the outside, which if it gets wet will draw up and put the coat out of shape. Owens had been a clerk in a dry goods store handling custom-made clothes for about ten years, and Kitchens had been in the mercantile business and handling such clothing for about thirty years. Under these circumstances they were competent as experts to testify as to the effect the wetting of the canvas in such coats would have.

The eighth exception imputes error as follows: "In refusing to allow the witness, Skinner, to testify and state why the railway company had not taken extra precautions to avoid trunks and baggage getting wet previous to this. It being respectfully submitted that it was both relevant and competent to prove that in view of there being an unprecedented rainfall, something beyond the experience of people of ordinary prudence, the company was not to be held responsible for not taking extra precautions to prevent injury, and was in response to the facts brought out by the plaintiffs on the cross-examination of defendant's witness as to the absence of a canvas covering, and would

have tended to negative the idea of negligence in not having such canvas on hand." The testimony was properly excluded because it would have been merely the opinion of the witness, and that, too, upon an irrelevant matter. It had already been shown that the trunks had been left exposed to a very heavy rain, and the question was as to the duty of the defendant company under such circumstances to protect the trunks by placing them under shelter or covering at the time of the injury. As it is the duty of a railroad company to protect the baggage of its passengers while in its custody from exposure to rain by the exercise of the care due under the circumstances, we do not see how its failure to exercise proper precautions in that regard in the past would tend to excuse or negative an inference of negligence in the present instance. Negligence does not cease to be negligence when it is customary.

Appellant's ninth exception is as follows: "In refusing to charge defendant's sixth request, to wit: 'Where baggage is injured, it is the duty of the passenger after the baggage is delivered to him to do all he can to lessen the damage; and if he fails to do this, and by reason of such failure the damage is increased, then, for this the railroad is not held responsible.' The error being that in refusing this request his Honor allowed the jury to estimate and give as damages any injury that might have been done to the clothing by reason of the failure of plaintiff or their agent to take care of them after they had been delivered to them by the railroad." This exception is not well taken, for an inspection of the record shows that the charge of the Judge was all that appellant could properly require in that connection. The case shows that in response to appellants' requests to charge, the jury were instructed as follows: "I refuse to charge you that, in that language; but I have already told you that if you believe the railroad was careless and negligent, and that was the cause, the direct and proximate cause, of the damage to the plaintiff, if he sustained any at all, then the plaintiff would be entitled to recover damages as they sustained by

reason of the carelessness and negligence of the railroad in injuring them, if you think the railroad did carelessly and negligently injure the property of the plaintiffs."

The tenth and last exception assigns error as follows: "In refusing to charge defendant's ninth request, to wit: 'If an injury is caused by an unprecedented rainfall, such as ordinary human foresight and prudence could not foresee, then such injury is caused by an act of God, for which the railroad is not to be held responsible.' The error being, it is respectfully submitted: *a.* In refusing to define what is an act of God.  *b.* In leaving it to the jury to say whether an unprecedented rainfall, such as ordinary human foresight and prudence could not foresee, was or was not an act of God.  *c.* In holding substantially that this was a question of fact for the jury instead of holding it to be a question of law for the Court." The Judge had already charged that a railroad company is not liable for such damage to goods in its custody by an act of God, and so stated in refusing the above request in the language proposed. The request was properly refused in that form because it failed to exclude all human agency as a co-operating cause. The correct rule is thus stated in *Slater* v. *R. R. Co.,* 29 S. C., 101, 6 S. E., 930: "Where an act of God causes injury to property in the hands of a common carrier and such act is the sole cause of such injury, then the proof of this fact is a perfect shield.  But if there be any negligence on the part of the carrier, which if it had not been present the injury would not have happened notwithstanding the act of God, the carrier cannot escape responsibility, and the *onus* is upon the carrier to show not only that the act of God was the cause, but that it was the entire cause, because it is only when the act of God is the *entire* cause that the carrier can be shielded." An act of God means "inevitable accident without the intervention of man and the public enemies." 2 Kent Comm., p. 597.

The judgment of the Circuit Court is affirmed.