## 9252

### STEELE v. ATLANTIC COAST LINE R. R. CO.

#### (87 S. E. 639.)

RAILROADS. MASTER AND SERVANT. NEGLIGENCE. DEFECTIVE APPLIANCES. EVIDENCE. PROXIMATE CAUSE. ISSUES. CHARGE. DAMAGES. NEW TRIAL.

1. MASTER AND SERVANT — RAILROADS — NEGLIGENCE — COUPLING CARS.— Where there is testimony tending to show that a yard conductor engaged in making a coupling, was negligent in failing to warn a brakeman who, under his direction, was operating the lever to open the knuckle of the coupler, of the proper moment to release the lever, and that such negligence was the proximate cause of plaintiff's injury, a nonsuit and direction of verdict for defendant is properly refused.

1a. MASTER AND SERVANT—FELLOW SERVANTS—LIABILITY OF PRINCIPAL.— Where defendant's yard conductor was negligent in failing to warn plaintiff of the danger in making a certain coupling, such negligence was imputable to the defendant.

2. MASTER AND SERVANT—DEFECTIVE APPLIANCES.—In an action at common law, a presumption of negligence on the part of the master arises, where there is either direct or circumstantial evidence that the appliance furnished by the master was defective, and, also, that the defect caused injury to the servant.

3. MASTER AND SERVANT—FEDERAL EMPLOYERS' LIABILITY ACT—FEDERAL SAFETY APPLIANCE ACTS.—Proof by plaintiff, in an action under the Federal Employers' Liability Act and Safety Appliance Act, of a violation of the latter act by the use of a defective coupler, and that its use was the proximate cause of plaintiff's injury, establishes a case of absolute liability against the master, irrespective of the degree of care exercised by the latter, and to which neither contributory negligence nor assumption of risk is a defense.

4. MASTER AND SERVANT—NEGLIGENCE—PRESUMPTIONS.—Mere proof that an instrument, appliance or machine furnished by the master broke while being used in the ordinary way, or that it failed, when operated, to perform the function for which it was designed, is not enough to raise a presumption that it was defective, or that the master was negligent in furnishing it.

4a. MASTER AND SERVANT—INJURIES TO SERVANT—PRESUMPTIONS.—Mere proof of an injury to a servant is insufficient to raise a presumption of negligence on the part of the master.

4b. MASTER AND SERVANT—INJURIES TO SERVANT—INFERENCE AND PRESUMPTION.—Although the furnishing of a defective appliance or the presence of a structural defect might warrant an inference of negligence in furnishing such an appliance, the inference is one of fact and not of law.

5. EVIDENCE—DEFECTIVE APPLIANCE—PROXIMATE CAUSE.—Expert testimony is admissible to show what a coupler will or will not do under given circumstances, and, if it fails to work as designed, to assign the cause of failure, and where there is such testimony tending to show the coupler was defective, and more than one inference could be drawn from the evidence as to whether such defect was the proximate cause of the injury both the questions were properly submitted to the jury.

6. PROXIMATE CAUSE—ISSUES.—In civil actions the law does not require proof to a certainty, and if the facts and circumstances in evidence warrant a reasonable inference that an injury to a servant was caused in any way alleged in the complaint for which the master would be liable, the question as to proximate cause should be submitted to the jury with proper instructions.

6a. MASTER AND SERVANT—INJURIES TO SERVANT—QUESTIONS FOR JURY—CAUSE OF INJURY.—That an injury to a servant might have been caused in several ways does not preclude submission of the issue of cause to the jury, where the evidence is sufficient to warrant a reasonable inference that the injury resulted as alleged in the complaint.

6b. TRIAL — INSTRUCTION — PROOF.— In such case the jury must be instructed not to base its finding on surmise, conjecture, or speculation, but upon proof and reasonable inferences from the evidence.

6c. EVIDENCE—INJURIES TO SERVANT—DEGREE OF PROOF REQUIRED.—In a servant's action for personal injuries he is not required to prove to a certainty the facts alleged, but it is sufficient if the evidence satisfies the mind and conscience of the Court and jury of the reasonable probability of the truth of such allegations.

7. MASTER AND SERVANT—NEGLIGENCE—CHARGE.—Where the jury were charged that the master's dereliction of duty in furnishing a defective coupler to a servant and that its use caused injury to the latter, might be proven by circumstantial evidence, the refusal of a request to charge that the mere fact that the coupler furnished failed to open, when an attempt was made to operate it, was not of itself such a circumstance as would warrant an inference that it was defective, and that the mere fact of injury to the servant was not enough to raise a presumption of negligence on the part of the master, was error.

(MR. CHIEF JUSTICE GARY *dissents,* as plaintiff did not rely upon a presumption of negligence, the refusal of the request was not prejudicial.

7a. TRIAL—INSTRUCTIONS—WEIGHT OF EVIDENCE.—In a servant's action for injuries it was error to refuse to instruct that the mere fact that the appliance furnished the servant did not perform the work for which it was designed was insufficient to show negligence of the defendant, and that the mere fact that the injury was sustained while at work assigned to plaintiff was insufficient to raise a presump-

tion of negligence, such an instruction being of vital importance and not upon the facts.

8. VERDICT—DAMAGES—NEW TRIAL.—Unless a verdict is wholly unsupported by evidence, or is so excessive as to justify the inference that it was capricious, or influenced by passion or other considerations not found in the evidence, if it is excessive, the responsibility for failure to reduce it rests upon the trial Judge.

9. ASSUMPTION OF RISKS—CHARGE.—Charge as to assumption of risks held free from error.

Before DeVore, J., Florence, November, 1914.  Reversed.

Action by W. M. Steele against Atlantic Coast Line Railroad Company and L. L. Crumpler.  From judgment for plaintiff, defendants appeal.  The facts are stated in the opinion of the Court.

The charge of the trial Judge, on assumption of risks, was as follows:

Every one of these specifications of negligence alleges, I believe, that the appliances of the coupling were defective. It is the duty of the railroad company to furnish reasonably safe coupling for the employee to work with, such coupling as a person of ordinary reason and prudence would furnish; and the employee has the right to assume that it was reasonably safe, but if it is not reasonably safe and the employee can easily see it without any minute inspection on his part, if he can readily see and know the danger, and he goes on and undertakes to use the appliance anyway and is injured,

FOOTNOTE.—As to the master's liability under Federal Safety Appliance Act, see *Great Northern Railway Co.* v. *Otos,* 36 Sup. Ct. Rep. 24; *Lorick* v. *S. A. L. Ry.,* 102 S. C. 276, 86 S. E. 675, and notes in 34 A. & E. Ann. Cas. 1914d, 386.  As to defense of assumption of risk in cases under Federal Employer's Liability Act, see cases of *S. A. L. Ry.* v. *Koennecke,* 36 Sup. Ct. 126, affirming 101 S. C. 86, 85 S. E. 374, and *S. A. L. Ry.* v. *Horton,* 36 Sup. Ct. 180, and *Lorick* v. *S. A. L. Ry.,* 102 S. C. 276, 86 S. E. 675, and notes in 36 A. & E. Ann. Cas. 1915b, 81; 47 L. R. A. (N. S.) 62; 20 L. R. A. (N. S.) 482, 483; 41 L. R. A. (N. S.) 57.

the railroad company would not be liable; for he is not bound to perform a work when he himself can see that appliances which the defendant has furnished him to perform that work with are not reasonably safe. If he can see it himself and know it, he can refuse to use it, and it is his duty to refuse to use it; and if he does not refuse to do it and goes on and undertakes to use it and is injured, he could not recover from the railroad company. As I have stated, he has the right to assume that it is in a reasonably safe condition, and he does not have to make any minute or detailed inspection to ascertain that, because he can rely on the law, which requires the master to furnish a reasonably safe appliance, and he has the right to assume that the master has done so. And in that charge of negligence it also says the plaintiff was holding the lever on one of said cars in such position that serious injury to him might be expected to result if the coupling should not be made when the said cars came together. If the master directs him to hold the lever in that position, or if he was an inexperienced man at that kind of work, and the master failed to instruct him how to hold the lever, and the master was negligent in those particulars, and that was the cause of his injury, why he would be entitled to recover; but if he was an experienced man and was holding the lever to suit himself, regardless of any instructions by the master as to the manner in which he should hold the lever, and he was aware of the fact that it was dangerous to hold it as he was holding it, and he went on and so held it, the master would not be liable if he was injured from that cause. * * *

The answer of the defendant in the second paragraph says that the defendant, L. L. Crumpler, had no right to direct plaintiff to perform any part of his duties in a dangerous way, or to direct him to go into a place of danger. Now, I cannot say whether Crumpler had a right to direct him or not, and I don't know whether he did direct him or

not. And you are to answer this question from this evidence. All I can say to you is that it is the duty of the employee to obey the reasonable directions and instructions of his superior; but, as I have stated to you before, if the superior gives a direction to an employee to do something that the employee can easily see is a dangerous thing to do, and when it is his duty to refuse to carry out the order or direction and he goes on and does the thing, knowing it is dangerous, seeing for himself it is dangerous, and he goes on and undertakes it and is injured, he could not recover. And if Crumpler had no right to direct him, and the plaintiff knew he had no right to direct him, the plaintiff was not bound to obey the order or directon. * * *

They also set up the defense of assumption of risks. That is, the risk assumed by the plaintiff in accepting the employment that was given to him. Whenever a person enters into a contract of employment, the party who employs him is regarded as the master, and the employee is regarded as the servant; and the servant assumes all the risks ordinarily incident to the employment which he contracts to engage in; but he does not assume the risk of defective appliances or machinery. He does not assume that risk.

The master is bound to furnish reasonably safe appliances to work with. But he does assume the ordinary risks incident to his employment.

"While the servant assumes the risk or risks that are ordinarily incident to his employment, that is, those that are open or apparent, he does not assume the risk or the negligence of a fellow servant and never includes the risk or the negligence of the master, in the performance of a nondelegable, nonassignable, duty, nor does the servant assume the risks or failure of the master to obey any statute that undertakes to prescribe the master's duty to the servant." .

I charge you that request in part. I refuse to charge you that he does not assume the risk of a fellow servant. My

judgment is that if the master has used due and ordinary care in employing his servants, that the risk of being injured by a fellow servant is assumed by any one of the servants who is employed. All that the law requires is that the master shall use due diligence in employing his servants. For instance, if you are employed to do some work in a cotton mill and the master uses due diligence in employing you, and I am employed to go there and work along with you as a fellow servant and I am injured by your carelessness, that is one of the risks I assume.

"The fact that the servant's work is done in the presence and under the immediate direction of the master's foreman, or the conductor, in this case, the servant had the right to assume that he may safely proceed to do the work required of him, and, therefore, is not bound in such a case to search for danger. He may rely for his safety upon this assumption."

I charge you that request as I have got it changed here.

4th. The jury are instructed that if plaintiff's injury was due to the position which he voluntarily assumed and the manner in which he voluntarily undertook to use the appliances furnished him, and if his injury would have happened by the use of such appliances in the position which he voluntarily assumed, even though such appliances had been in reasonably safe condition, then his injury was due to one of the risks assumed by him, and if there is no proof that any Federal statute enacted for the safety of employees has been violated, he cannot recover on account of having assumed the risk of the injury he sustained.

5th. The jury are instructed that the law applicable to this case is that an employer is not a guarantor of the safety of the place of work, or of the machinery and appliances of the work. The extent of its duty to its employee is to see that ordinary care and prudence are exercised, to the end that the place in which the work is to be performed and the

tools and appliances of the work may be safe for the workman.

Now, I will add there, they are bound to furnish a reasonably safe place for the employee to work in and reasonably safe appliances for him to work with, and the employee has the right to assume that the master has done that.

6th. The jury are instructed that if they should find, by a preponderance of the evidence, that it was obvious that the place in which plaintiff undertook to do the work assigned to him was not, by reason of any defect in the appliances, but by reason of the peculiar situation thereof, dangerous, and that this danger was or should have been known to plaintiff and that he voluntarily undertook the work in such place and without objection, and that he knew the risks incident thereto, then he voluntarily assumed the risk incident to such work, and you must find for this defendant.

On the question of contributory negligence, and on the question of assumption of risks, the defendant is bound to prove those two defenses by the greater weight or preponderance of the evidence just the same as the plaintiff has to prove his case by the greater weight or preponderance of the testimony. If the evidence opposed to the assumption of risk and to contributory negligence is evenly balanced with that in favor of them, then, if it is evenly balanced on both sides of those questions, they would not have to be made out.

*Mr. F. L. Willcox,* for appellants, submits there was no proof of negligence, and cites: 72 S. C. 398; 66 S. C. 256; 69 S. C. 529; 72 S. C. 97; 179 U. S. 658. *As to assumption of risks:* 223 U. S. 503; 191 U. S. 64. *Verdict excessive:* Sutherland Damages (3d ed.), sec. 953; 2 McC. 230.

*Messrs Ragsdale & Whiting,* for respondent, cite: *As to refusal of nonsuit:* 91 S. C. 523; 98 S. C. 379. *Assumtion of risks:* 84 S. C. 287; 233 U. S. 492; 68 S. C. 83.

*Safety Appliance Act:* 220 U. S. 580; *Ib.* 559.    *Charge:*
98 S. C. 272.

January 3, 1916.

The opinion of the Court was delivered by MR. JUSTICE
HYDRICK.

Plaintiff was injured while he and the defendant, Crump-
ler, were attempting to couple two passenger cars which
were provided with automatic couplers.    The coupler, which
is alleged to have been defective and to have caused the
injury, consists of a knuckle which is hinged in one side of
the drawhead, and is closed in coupling by impact of the
cars.    On the back of the knuckle there is a projection,
called the heel, and when the knuckle is closed, a piece of
iron, called the lock, slides, or is forced by some device, in
front of the heel and locks it.    To open the knuckle, the
lock must be drawn from its position in front of the heel.
This is done by a chain, about seventeen inches long, one end
of which is attached to the lock and the other end to a rod
which extends down through the platform of the car.    When
the rod is turned by a lever on the platform, the lock is pulled
from its position in front of the heel, and the knuckle may be
opened.    When a coupling is to be made, the knuckle on one
of the cars to be coupled must be open, so that the corre-
sponding knuckle on the other car can pass into the end of
the drawhead, and when it does, the impact closes the open
knuckle, and the lever being released, the lock slides, or is
thrown back into its position in front of the heel and locks
the knuckle, and the coupling is accomplished.    Of course, if
the lever should not be released, the lock cannot go back to
its position, and no coupling is effected.    If the knuckle is
closed, it has to be opened by hand, as it does not open auto-
matically, when unlocked, except in uncoupling cars, when
it is pulled open by the knuckle on the opposite car.

While not intended to be complete and technically accur-
ate, the foregoing description of the coupler and the manner

of its operation, is sufficient to understand the contentions of the parties and issues made by the testimony with regard to the cause of plaintiff's injury.

Crumpler was yard conductor, and had the right to direct plaintiff in the work. In obedience to his order, plaintiff went upon the platform of a car and turned the lever so that Crumpler, who was on the ground, could open the knuckle and effect a coupling with a car which was being backed up to it. Crumpler failed to open the knuckle and the cars came together while plaintiff was holding the lever, which was forced around so suddenly and violently by the impact of the cars that plaintiff's wrist was injured.

Plaintiff alleges that the injury was caused by the negligence of defendant and Crumpler in the following particulars: In failing to furnish a safe and suitable coupler; in ordering him to use a defective coupler, when proper inspection would have discovered the defect and danger of using it; in causing the cars to come together with great force, when the coupler was defective, and plaintiff was holding the lever in such position that serious injury might have been expected to result to him, if the coupling should not be made; in the failure of Crumpler to open the knuckle, after he had turned the lever; and in his failure to signal or warn plaintiff to release the lever in time to prevent the injury. The defendants denied the charge of negligence, and set up the defense of contributory negligence and assumption of risk.

Plaintiff testified that he was an expert coupler, having been in the business about five years; that he knew the mechanical construction and operation of the coupler in question; that although he had not examined the chain to this coupler, he was sure that it was too long; that he was not guessing that it was too long from the mere fact of the failure of the appliance to work, but based his statement upon his practical knowledge of its construction and his

experience as a coupler; that, if it had not been too long, when he turned the lever, Crumpler could have opened the knuckle; but that, being too long, it failed to pull the lock from its position in front of the heel of the knuckle far enough to allow the knuckle to open. On cross-examination, he admitted that, if Crumpler pulled the knuckle before he turned the lever, the knuckle would not have opened. He admitted, also, that, if the knuckle was closed, a direct impact on the knuckle would have exerted no force on the lock, the thing to which the chain was attached, because the lock was in front of the heel of the knuckle; but said that, when the knuckle fails to open and the impact is not direct, and they do not couple, they sometimes slide by, and that throws the whole drawhead to one side and puts such sudden tension on the chain as to cause the lever to fly back; that it is necessary for the drawhead to have some play from side to side. He testified, further, that it was Crumpler's duty to warn him, by word or signal, of the proper moment to release the lever to prevent injury to him by its rebound, and allow the lock to go back in place and effect the coupling; that such warning was not given him, and, if it had been, he would not have been injured; that from his position on the platform, he could not see Crumpler, who was on the ground on the opposite side, on account of the vestibule of the car, which was between them, and, therefore, he could not see that Crumpler had failed to open the knuckle, or determine for himself the proper moment to release the lever; that he was listening for Crumpler to tell him when to let loose the lever, and it was his duty to hold it, until he had orders to "let go."

Crumpler testified that plaintiff could have seen him and could have seen that he had failed to open the knuckle, but did not deny that it was his duty and custom to warn plaintiff of the proper moment to release the lever. He said, also, that plaintiff did the work according to his directions

and in the proper way; but he could not say whether he undertook to open the knuckle before plaintiff had turned the lever or not; that he tried to open the knuckle and it would not work, and he stepped back and the cars came together. In a signed statement given plaintiff's attorneys just after the accident, he said that, if the knuckle had opened, plaintiff would not have been injured; but, said, at the trial, that he might have been injured, notwithstanding his failure to open the knuckle, if the impact had been such as to throw the whole drawhead to one side. Defendant also introduced testimony tending to show that the car had been inspected before it was sent out on the road, and when it came back, and there was no complaint or record of any defect in the coupler; and that, after the accident, it was coupled to a train that went out that day, and was uncoupled and coupled again to the train at the end of the run, in turning the train around, and no report or record of any defect in the coupler or its operation had been noted.

Defendant's motion for nonsuit and direction of the verdict were refused, and the jury found a verdict for plaintiff for $10,600.00, upon which judgment was entered. The case is brought here on exceptions, assigning error in the refusal of the motions for nonsuit and direction of the verdict, in the charge and the refusal to charge one of defendant's requests, and in the refusal of a motion for a new trial, based on the ground that the verdict is excessive.

It will be seen, from the foregoing outline of the evidence, that the motion for nonsuit and direction of the verdict were properly refused. Passing for the present, the other specifications of negligence and the question whether there was any evidence tending to prove any of them, there was evidence tending to support the charge that Crumpler was negligent in failing to warn plaintiff of the proper moment to release the lever, and that his failure to do so was the cause of the injury.

If Crumpler was negligent in that respect, his negligence is imputable to the company, for he was the representative of the company on the spot. It is inferable from the testimony that holding the lever at the moment of impact of the cars is attended with danger, whether the knuckle is open or closed, because, in either event, the whole draw-head may be thrown to one side and cause the lever to rebound, and that, in anticipation of this danger, or some other, it was Crumpler's custom and duty to warn plaintiff of the proper moment to let go the lever, and that, if he had done so, the injury would have been avoided.

We come now to the contention as to the evidence most strongly urged by appellant, to wit: Its alleged insufficiency to show any defect in the coupler; and, if there was such defect, that it caused the injury. To entitle a servant to recover of the master for injury caused by a defective appliance furnished, he must prove not only that the appliance was defective, but, also, that the defect caused the injury. He may do this either by direct evidence, or by proof of circumstances which warrant a reasonable inference of the truth of those facts; and when he has done this, in an action at common law, a presumption of negligence on the part of the master arises, and puts upon him the burden of proving that he exercised due care in the premises. But, in an action like this, under the Federal statutes, known as, the Employers' Liability Act, and the Safety Appliance Acts, proof by plaintiff of a violation of the Safety Appliance Acts, by the use of a defective coupler, and that its use was the proximate cause of the injury, makes a cause of absolute liability, for the duty to furnish such appliances as are prescribed by the acts is absolute, and not limited by the exercise of due care and diligence on the part of the carrier; and the defenses of contributory negligence and assumption of risk will not defeat recovery for an injury so caused.

8—103

*Delk* v. *St. Louis & San Francisco R. Co.,* 220 U. S. 580, 31 Sup. Ct. Rep. 580.

But it is well settled that, in actions by a servant against his master, the mere proof of an injury raises no presumption of negligence on the part of the master; and that proof of the mere fact that an instrument, appliance or machine furnished by the master broke, while being used in the ordinary way, or that it failed, when operated, to perform the function for which it was designed, is not enough to raise a presumption that it was defective, or that the master was negligent in furnishing it. *Gentry* v. *Ry.,* 66 S. C. 256, 44 S. E. 728; *Edgens* v. *Mfg. Co.,* 69 S. C. 529, 48 S. E. 538; *Keys* v. *Granite Co.,* 72 S. C. 97, 51 S. E. 549; *Green* v. *Ry.,* 72 S. C. 398, 52 S. E. 45, 5 A. & E. Ann. Cas. 165; *Patton* v. *T. & P. R. Co.,* 179 U. S. 658, 21 Sup. Ct. 275. It may be, however, as was said in the Edgens case, that a description of the appliance and the nature of the accident might be enough to warrant a reasonable inference of negligence on the part of the master in providing an appliance which, as a reasonable man, he could not regard as adequate for the purpose for which it was intended, or that a description of the appliance might show a structural defect which reasonable inspection would have discovered. But, in either case, the inference would be one of fact from the evidence, and not a presumption of law. In the case at bar, the description of the appliance alone shows no defect in it. But plaintiff testified that the chain was too long. Appellants contend that this is but an inference from the failure of the appliance to do what it was designed to do, which is not permissible under the rule above stated. Plaintiff testified, however, that he understood the mechanism of the appliance, and from his practical knowledge of it and his experience in operating it, he knew that, if the chain had not been too long, it would have unlocked the coupler, when the lever

was turned.   That testimony was competent; because there are some things with regard to the operation of machinery that are almost capable of demonstration; and one who thoroughly understands the construction of a machine and the manner of its operation may be able to say with reasonable certainty what it will or will not do under given circumstances, and, if it fails to work as designed, to assign the cause of the failure.   There was, therefore, some testimony tending to prove that the chain was too long.   But, even if it was too long, it does not follow that that was necessarily the cause of Crumpler's failure to open the knuckle, because it is inferable from the testimony that he might have pulled on the knuckle before the lever was turned. Therefore, on the allegation that the coupler was defective, it was a question for the jury to decide, in the light of all the circumstances, whether the chain was too long; and, if so, whether that, or the other contingency suggested, was the cause of the failure to open the knuckle; and, also, whether the failure to open the knuckle was the cause of the injury, for plaintiff and Crumpler both testified that, if the knuckle had been opened, he would not have been injured.   True, both of them said, also, that he might have been injured, if the knuckle had been open, and he had hold of the lever, if the impact was such as suddenly to throw the whole drawhead to one side.

It does not follow that, because it may appear from the testimony that an injury may have been caused in one of two or more ways, that the jury may not be allowed to determine in what way it was caused, if the facts and circumstances in evidence warrant a reasonable inference that it was caused in any way alleged in the complaint for which the master would be liable.   In such case, the jury should be instructed, as they were in this case, that their finding must not be based upon surmise, conjecture or speculation, but upon proof—reasonable infer-

ence from the evidence—and thereby that which is purely speculative may be eliminated.   Otherwise, a plaintiff would be required to prove to a certainty the cause of injury, if evidence could be adduced suggesting the possibility of some other cause than that alleged.   But, in civil actions, the law does not require proof to a certainty, but it is enough, if the evidence is sufficient to satisfy the mind and conscience of the Court and jury of the reasonable probability of the truth of the allegations.

As to the question whether, the knuckle being closed, the length of the chain had any part in causing the injury: As we understand the mechanism and operation of the coupler, as these are explained in the testimony, it is inconceivable that, with the knuckle closed, the length of the chain had anything to do with the injury, except in so far as it may have been the cause of the failure to open the knuckle, because, according to all the witnesses, the impact upon the closed knuckle could not have transmitted any force whatever to the lock, the thing to which the chain was attached, because it was in front of the heel of the knuckle.   This was the ground most strongly relied upon by appellants in support of their motion for nonsuit and direction of the verdict, and if this were the only standpoint from which the evidence might be viewed, their contention would be correct.   But, as we have shown, the testimony was open to other reasonable inferences as to the cause of the injury.

The defendants requested the following instruction: "The jury are instructed that the mere fact that the instrumentality furnished plaintiff did not perform the work for which it was designed at any given time, is not sufficient to show negligence on the part of the defendant, Atlantic Coast Line Railroad Company, in furnishing such appliances, nor is the mere fact of the injury sustained by plaintiff while engaged in the work assigned to him sufficient to raise the presumption of negligence."   This request was

refused on the ground that it was a charge on the facts.    In this, the learned Judge was in error.    From what has been said above as to the presumptions arising in actions like this, and from the authorities there cited, it clearly appears that the request contained sound propositions of law applicable to the case, and defendants had the right to have the jury so instructed.    The requested instruction was of vital importance to defendant in view of the instruction given in plaintiff's first request, to wit, that defendant's alleged dereliction of duty and that it caused the injury might be proved by circumstantial evidence.    In this situation defendant was entitled to have the jury instructed that the mere fact that the coupler failed to open, when an attempt was made to operate it, was not of itself such a circumstance as would warrant an inference that it was defective; and, also, that the mere fact that plaintiff was injured was not enough to warrant an inference of the negligence alleged.    The exception assigning error in the refusal of this request must, therefore, be sustained.

As the case must go back for a new trial, we think it best to refrain from any discussion of the testimony upon which appellants contend that the Court erred in refusing their motion for a new trial on the ground that the verdict was excessive, lest it might result in prejudice to one side or the other.    Under the Constitution and statutes, the discretion to control juries in respect to the amount of their verdicts in actions for damages is vested in the trial Judges, who, it must be presumed, recognize and appreciate their responsibility, and exercise the discretion vested in them with fairness and impartiality.    This Court has no jurisdiction to review matters of fact in an action at law; and, therefore, unless a verdict is wholly unsupported by evidence, or is so excessive as to justify the inference that it was capricious, or influenced by passion, prejudice, or other considerations not found in the evidence, if it is excessive,

the responsibility for failure to reduce it must rest upon the trial Judge. *Huggins* v. *R. Co.,* 96 S. C. 267, 79 S. E. 406.

The other exceptions are without merit and require no special consideration. With regard to those assigning error in the charge as to assumption of risk, it may be said that the charge upon that subject, as a whole, is free from error.

Judgment reversed.


MESSRS. JUSTICES FRASER and GAGE concur in the opinion of the Court.


MR. CHIEF JUSTICE GARY, *dissenting.* The question·we shall discuss is, whether there was error on the part of his Honor, the presiding Judge, in refusing to charge the following request:

"The jury are instructed that the mere fact, that the instrumentality furnished plaintiff, did not perform the work for which it was designed, at any given time, is not sufficient to show negligence on the part of the defendant, Atlantic Coast Line Railroad Company, in furnishing such appliances, nor is the mere fact of the injury sustained by plaintiff, while engaged in the work assigned to him, sufficient to raise the presumption of negligence."

Both the plaintiff and the defendant introduced testimony.

The charge and the requests to charge clearly show that the plaintiff did not rely upon the presumption of negligence, arising from the fact that he suffered injury, through an instrumentality of the defendant, but upon the testimony of the witnesses who testified.

As such question was not made an issue in the case, it can not be reasonably supposed that the refusal to charge the request, affected the rights of the defendant prejudically.

There are two requests which were presented by the defendant, to which we desire to call special attention. one of which is as follows:

"The jury are instructed, that in order to recover in this case the plaintiff must prove, not only the fact of his injury, but that such injury was due to the negligence of the defendant, Atlantic Coast Line Railroad Company, and in order to establish this proposition, he must prove to your satisfaction that said defendant was guilty of one or more of the acts of negligence alleged in the complaint, and, further, that one or more of such acts of negligence tended to cause the injury."

His Honor, the presiding Judge, said, "I charge you that."

The other request is as follows:

"The jury are instructed that the burden rests upon the plaintiff in this case to show, that the master had been negligent in one or more acts complained of, and it is not enough to show, that plaintiff was injured by defendant's car, nor is it enough to show that his injury was the result of some negligence, but, on the contrary, the law requires plaintiff to prove that the injury was the proximate result of that particular negligence stated in his complaint."

His Honor said: "I charge you, that they are bound to prove the defendant was negligent, and they are bound to prove, that his negligence was a direct and proximate cause of the injury, that is, some one or more of the acts of negligence set forth in the complaint."

There was no exception to either of said rulings.

For these reasons I dissent.

MR. JUSTICE WATTS concurs in the dissenting opinion delivered by the CHIEF JUSTICE.

NOTE.—This case has been carried on writ of error to the United States Supreme Court.