16652

CROZIER v. CHARLESTON & W. C. RY. CO. *ET AL.*
(71 S. E. (2d) 800)

*Messrs. Wyche, Burgess & Wyche,* of Greenville, *for Appellants,*

*Messrs. Price & Poag,* of Greenville, *for Respondent,*

July 25, 1952.

HENDERSON, Acting Assocate Justice.

The respondent, S. E. Crozier, was employed by the appellant railway companies as a switchman at their freight yard at Augusta, Georgia. On the night of January 29, 1950, he was engaged as a member of a crew in switching four

coal cars consigned to Merry Brothers Brick Company. The cars were equipped with the push down lever type of uncoupling device. The lever could be reached by one standing beside the track, and was designed to raise the lock and uncouple the car. On this occasion the train was being backed by the engineer in order to place L. & N. Coal car No. 182080 in another track, the respondent running alongside the car and holding to it. He pushed down the lever, but it did not operate. He pushed down a second time with greater force, again without being able to uncouple the car. He then signaled the engineer for a second back-up movement, and attempted a third time to operate the lever. He pushed harder than before. The lever went down farther than it was intended to go and threw the respondent's weight on his right arm and elbow. The pin had become disconnected and loose from the lock. He said that he felt intense pain in his elbow and arm, and was almost thrown under the car wheels. He could not uncouple the car from the side he was on, so he went around to the opposite side of the track and succeeded in the uncoupling by operating the device on the car which was connected to the defective one.

The parties were engaged in interstate commerce, and the action was brought under the Federal Employers' Liability Act, 45 U. S. C. A. §§ 51-59. The plaintiff alleged that his injuries were brought about by a violation by the railroad companies of the Safety Appliance Act, 45 U. S. C. A. § 2 which is as follows: "It shall be unlawful for any common carrier engaged in interstate commerce by railroad to haul or permit to·be hauled or used on its line any car used in moving interstate traffic not equipped with couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars."

The answer of the defendants, in addition to a general denial, set up the defenses of contributory negligence and assumption of risk. The plaintiff demurred to the two last named defenses upon the ground that since the action was based solely upon an alleged violation of the Safety Appli-

ance Act these defenses were not available to the appellants, under sections 53 and 54 of the Act. The demurrer was sustained and the case proceeded upon the sole contention that the injuries were caused directly and proximately by a violation of section 2 of the Safety Appliance Act.

The cause was tried at Greenville before Honorable J. M. Brailsford, Jr. and a jury, and resulted in a verdict in favor of the plaintiff for $15,000.00.

Although relief in a case of this character is pursued under the Federal Employers' Liability Act, which is basically a form of action predicated upon negligence, the law is well settled that a violation of the Safety Appliance Act is itself an actionable wrong in no way dependent upon negligence and for the proximate results of which there is liability. *O'Donnell, Administrator, v. Elgin, Joliet & Eastern Railway Company,* 338 U. S. 384, 70 S. Ct. 200, 94 L. Ed. 187. The duty imposed by the Safety Appliance Act is absolute and not based upon negligence. *Carter v. Atlanta & St. Andrews Bay Railway Company,* 338 U. S. 430, 70 S. Ct. 226, 94 L. Ed. 236. A railroad company which violates this statute is not excused by any showing of care, however assiduous. *Brady v. Terminal Railroad Association,* 303 U. S. 10, 58 S. Ct. 426, 82 L. Ed. 614.

The facts in our own case of *Sessions v. Atlantic Coast Line Railroad Company,* 170 S. C. 15, 169 S. E. 543, are remarkably similar to those in the instant cause. There also a switchman, while attempting to uncouple freight cars, was injured by reason of a defect in the lever and uncoupling device. The Court held that the defendant had an absolute duty to furnish such couplers as are required by the Safety Appliance Act. Also, in *Steele v. Atlantic Coast Line Railroad Company,* 103 S. C. 102, 87 S. E. 639, 642, another case of a defective coupler, the Court said that "the duty to furnish such appliances as are prescribed by the acts is absolute, and not limited by the exercise of due care and diligence on the part of the carrier".

The first question presented by the appeal is, has the section of the Safety Appliance Act relating to couplers been violated by the defendants?

The appellants contend that the Circuit Judge should have directed a verdict in their favor and should have granted judgment *non obstante veredicto* on the ground that the evidence showed that the car in question could be uncoupled without the necessity of the plaintiff going between the ends of the cars, and that he did not in fact go there at any time to operate the uncoupling device; and they say that there was error in the refusal of the trial Judge to charge their requested instructions that if the plaintiff's injuries were not caused by the necessity of his going between the ends of the cars, it would be the jury's duty to find a verdict in favor of the defendants, and that the plaintiff must prove that it was necessary for him to go there to do the uncoupling.

It is not essential to a recovery in a case of this kind that the switchman be injured while actually standing between the ends of the cars. The lever which was intended to make it unnecessary to go there would not operate on this occasion. It not only failed to function properly and efficiently, but the evidence shows that it was defective. It was impossible for the plaintiff, while standing in a position of safety beside the car, and attempting to operate the device in a proper and usual manner, to make it work. In fact later on another switchman, Hair, actually did have to go between the rails and open the knuckle, by taking his hand and lifting up the lock. It was a question for the jury to decide whether or not the defendants failed to equip the car with couplers which could be uncoupled without the necessity of the switchman going between the ends of the cars.

In the case of *Louisville & Nashville Railroad Company v. Layton*, 243 U. S. 617, 37 S. Ct. 456, 457, 61 L. Ed. 931, the Supreme Court of the United States pointed out that the defendant claimed that the Safety Appliance Act was

"intended only for the benefit of employees injured when between cars for the purpose of coupling or uncoupling them. This claim is based wholly upon the expression, 'without the necessity of men going between the ends of the cars' ". The Court then goes on to make the following statement: "While it is undoubtedly true that the immediate occasion for passing the laws requiring automatic couplers was the great number of deaths and injuries caused to employees who were obliged to go between cars to couple and uncouple them, yet these laws as written are by no means confined in their terms to the protection of employees only when so engaged. The language of the acts and the authorities we have cited make it entirely clear that the liability in damages to employees for failure to comply with the law springs from its being made unlawful to use cars not equipped as required,—not from the position the employee may be in, or the work which he may be doing at the moment when he is injured. This effect can be given to the acts and their wise and humane purpose can be accomplished only by holding, as we do, that carriers are liable to employees in damages whenever the failure to obey these Safety Appliance Laws is the proximate cause of injury to them when engaged in the discharge of duty."

It is true that this case involved a failure of the automatic coupler to act, rather than a defect in the uncoupling device, as here, but as is pointed out in *Johnson v. Southern Pacific Company,* 196 U. S. 1, 25 S. Ct. 158, 162, 49 L. Ed. 363, the words "without the necessity of men going between the ends of the cars" apply to coupling as well as to uncoupling. The Court said: "We dismiss, as without merit, the suggestion which has been made, that the words 'without the necessity of men going between the ends of the cars,' which are the test of compliance with § 2, apply only to the act of uncoupling. The phrase literally covers both coupling and uncoupling; and if read, as it should be, with a comma after the word 'uncoupled,' this becomes entirely clear."

In the case of *Fort Street Union Depot Company v. Hillen,* 6 Cir., 119 F. (2d) 307, certiorari denied, 314 U. S. 642, 62 S. Ct. 82, 86 L. Ed. 515, it was held that the Safety Appliance Act governs, although the employee is not engaged in an operation in which the safety appliances are specifically designed to furnish him protection, nor is it necessary that he be using the defective device.

The rule was laid down in *Philadelphia & Reading Railroad Company v. Eisenhart,* 3 Cir., 280 F. 271, certiorari denied, 260 U. S. 723, 43 S. Ct. 13, 67 L. Ed. 482, that the liability of carriers under this section is not limited to the protection of employees in the act or at the place of coupling or uncoupling cars. The decisive question in each case is whether the carrier's failure to obey this section was or was not the proximate cause of the injury to the employee, without regard to the place and character of his work.

It was decided in the case of *Hoffman v. New York, New Haven & Hartford Railroad Company,* 2 Cir., 74 F. (2d) 227, certiorari denied, 294 U. S. 715, 55 S. Ct. 513, 79 L. Ed. 1248, that an employee's right to recover is not limited to situations where he is engaged in coupling at the time of the accident.

To the same effect are *Anderson v. Baltimore & Ohio Railroad Company,* 2 Cir., 89 F. (2d) 629, certiorari denied, 302 U. S. 696, 58 S. Ct. 14, 82 L. Ed. 538; *Western & Atlantic Railroad v. Gentle,* 58 Ga. App. 282, 198 S. E. 257, certiorari denied, 305 U. S. 654, 59 S. Ct. 252, 83 L. Ed. 424; and *Saxton v. Delaware & Hudson Company,* 256 N. Y. 363, 176 N. E. 425.

In our opinion the exceptions relating to this phase of the case should be overruled.

The remaining exceptions are concerned with the questions of the proximate cause of the plaintiff's injuries and the damages which he sustained. The first contention of the appellants in this respect is that the trial Judge should have directed a verdict in their favor, and should have given judg-

ment notwithstanding the verdict, on the ground that "the undisputed evidence shows that plaintiff's disability, if any, was caused by a pre-existing injury and disease and not by an alleged injury to him while operating the coupling device."

At the time involved in this action the plaintiff was fifty-seven years of age. When he was a child about four years old he hurt his right elbow. He said that he had never had any trouble from that injury. He had always led a very active life, in occupations where strong arms were necessary. As a young man he was a member of the National Guard for two years. He did manual labor on the farm until he was about twenty years of age. He then worked for a telegraph company as a lineman, his duties requiring hard manual labor and the use of both arms. After that he worked for an electric railway company as a motorman on one of its cars, in this job making vigorous use of his right arm in applying the brakes. He also did carpenter work from time to time. In 1919 he was employed as a switchman by the Charleston & Western Carolina Railway Company and has worked for it continuously in that capacity for thirty years.

In 1936 he sprained his right elbow while engaged in his duties with the railroad company. At that time he received treatment for a sprain only, and was able to go back to his regular work in five days. It was about fourteen years later that he sustained the injury now in question, during all of which time he performed his duties as a switchman. After the 1950 injury he was obliged to have an operation on his elbow. Three small pieces of loose bone were removed. The doctors who testified stated that in their opinion these loose bones had been there some time before 1950, and that he had a pre-existing condition of traumatic arthritis in his elbow. He was retired by the railroad company, and is now totally disabled to act as a switchman or to do similar manual work.

We believe that the Circuit Judge correctly refused to direct a verdict for the defendants on this ground. There

was a question for the jury to determine what his previous condition was, and whether the injury sustained in 1950 aggravated any pre-existing condition which he may have had. *Reading Company v. Geary,* 4 Cir., 47 F. (2d) 142, 79 A. L. R. 226, certiorari denied, 283 U. S. 844, 51 S. Ct. 492, 75 L. Ed. 1454. Also 25 C. J. S., Damages, § 21, p. 479. And in addition to this there is to be considered the pain and suffering caused directly by the 1950 injury. That alone would prevent a directed verdict.

The appellants next contend that in no event can the plaintiff recover for any damage caused by the aggravation of a pre-existing disease or injury, since he did not allege in his complaint that he had arthritis or any other pre-existing disease or injury which was aggravated on the present occasion.

The question concerns the law as to general and special damages. A general allegation of damages will let in evidence and warrant a recovery of all such damages as naturally, logically, and necessarily result from an unlawful act. Special damages, which do not ncessarily result, must be alleged. The object of the requirement that a plaintiff should set forth any special damage is to avoid surprise to the other party. *Hobbs v. Carolina Coca-Cola Bottling Company,* 194 S. C. 543, 10 S. E. (2d) 25.

The complaint in this case alleges that the plaintiff received serious, painful, and permanent injury to his arm, and sets forth in great detail the manner in which it occurred; that he felt a painful wrench or sprain at the time, and that as a result of the injury he is now totally incapacitated from work, and his right arm is permanently disabled; and that he has suffered great pain in his right arm and elsewhere about his body.

There exists no uncertainty as to the cause of the damage complained of, or of the effect which the injury produced, and the defendant was sufficiently advised of the character of the injury.

At 25 C. J. S., Damages, § 135, p. 765, it is said "the courts are not in accord as to whether the aggravation or recurrence of a previously existing condition must be specially pleaded to justify proof of or recovery therefor, some holding that such a special allegation thereof is essential and others holding that it is not."

We believe that the weight of authority, and the better rule, is that it is not necessary to plead such aggravation where, as in this case, the entire circumstances of the injury and the resultng damages are set forth in the complaint.

The appellants then say that there was error on the part of Judge Brailsford in refusing to charge their thirteenth request which was as follows:

"If you find that at the time plaintiff claims he was injured, he was already suffering from a pre-existing injury or from a pre-existing disease in his arm or elbow, and that his pre-existing injury or disease, or both, is the direct and proximate cause of his alleged disability, then he could not recover any amount from the defendants, and your verdict should be 'We find for the defendants' ".

As stated by the trial Judge in his order refusing a new trial, he believed that the request without the insertion of the word "sole", just before the word "direct" might have tended to mislead the jury.

We agree with the Circuit Judge that in the circumstances of this case, where the plaintiff had sustained an injury at a previous time and also the one upon which the action is brought, the wording of the request might have been somewhat confusing to the jury, without making it clear to them that the language of the request referred only to the earlier injury, and that it did not take into consideration any aggravation of it by the 1950 occurrence. Besides, the Judge in other parts of his charge made it quite clear to the jury that there could be no recovery unless it was found that a violation of the statute was a proximate cause of the plaintiff's disability. The Circuit Judge stated to the jury

that if it found that the act had been violated, "then your next inquiry will be whether such violation was the proximate cause or was a contributing cause of injury to the plaintiff. For even though the act should be violated by the defendants, the plaintiff is entitled to recover only if he has been injured thereby; and the duty is also upon the plaintiff to establish this element of his cause of action by the greater weight or preponderance of the evidence. If you find that he has failed to do so, you need go no further in your consideration of the case but should find a verdict for the defendants. But, if you find that the plaintiff has established a right to recover, it will necessarily be your duty to consider the question of damages."

Besides, the request dealt with disability only, and did not take into consideration the element of pain and suffering resulting from the 1950 injury.

In the last exception the appellants allege error in a portion of the charge. The trial Judge had told the jury that if they should find from the testimony that the plantiff had permanently lost the use of his arm, and should further find that the actionable conduct of the defendants was a proximate cause of his injury, the plaintiff would be entitled to recover just compensation therefor. He then said: "But, of course, in arriving at the amount of just compensation, you would have the right to take into consideration the condition of the arm prior to the alleged injury and any impairment of the arm, if any such is shown by the evidence that existed prior to the alleged injury." The appellants especially find fault with the words "you would have the right to take into consideration", and contend that the Court should have said that it was the duty of the jury to take into consideration the condition of the arm prior to the alleged injury, and that it was left to the discretion of the jury to take the previous injury into consideration or not to take it into consideration.

This statement of the trial Judge must be taken in connection with his charge as a whole, and when that is done

we feel sure that the jury was not misled, but was carefully instructed that it should only give such damages as proximately resulted from any violation of the statute which' took place on the day in question in 1950. The Judge said: "If the plantiff is entitled to recover, he should be awarded such amount by the jury as in your best judgment and discretion, based upon the evidence in the case, would reasonably compensate him for injuries, if any, caused by the actionable conduct of the defendants."

It is also to be observed that at the conclusion of his charge the trial Judge asked if there was anything else, and no further request was presented.

All of the exceptions are overruled, and the judgment of the Circuit Court is affirmed.

BAKER, C. J., and FISHBURNE, TAYLOR and OXNER, JJ., concur.