17543

Thomas E. CORLEY, Respondent, v. SOUTH CAROLINA STATE HIGHWAY DEPARTMENT, Appellant

(109 S. E. (2d) 164)

*Messrs. Daniel R. McLeod, Attorney General, Edgar L. Morris* and *W. Ray Berry,* of Columbia, *for Appellant,*

*Messrs. McLeod & Singletary,* of Columbia, *for Respondent,*

June 10, 1959.

TAYLOR, Justice.

This appeal from the Court of Common Pleas for Richland County arises out of an action for breach of contract and presents the sole question of whether the trial Judge erred in refusing defendant-appellant's request to charge the jury "that they are not to take into consideration the fact that this building might sink further and further damage might be done, because this is for damages as of now."

The complaint alleges that in March, 1956, plaintiff executed and delivered to defendant a right-of-way deed which provided that defendant would move a combination store and dwelling and other outbuildings and restore them in as good condition as before being moved; that subsequently the defendant did move the buildings; but plaintiff alleges that it did so in violation of its agreement by not leaving the buildings in as good condition as before they were moved; that they were badly damaged to the extent that it was impossible to restore them to their original condition. The answer admitted the contract between plaintiff and de-

fendant but denied that the buildings could not be restored to as good or better condition than they were before moving.

Plaintiff's case was presented upon the premise that the combination house and store building were damaged beyond repair and that he was entitled to its fair market value before being moved. Defendant, while conceding some damage, contended that the building was capable of being repaired and that such attempt had been made but that plaintiff had prevented it from doing so; further, that the building could be restored to as good condition as before moving for the sum of $1,750.00.

The testimony relating to whether the building was susceptible of being restored to its original condition or was a total loss varies widely. Witnesses for plaintiff without exception testified that the building was damaged beyond repair and had no value other than salvage, which was the amount it would cost to demolish the building; that the building leaked badly, the walls were twisted, the floors buckled and large cracks had developed from the settling and shifting of the building which went on continually. The value of the building prior to removal was variously estimated from $10,000.00 to $14,000.00. On the contrary, testimony for defendant was to the effect that the building might readily be restored to as good or better condition as before removal for between $1,000.00 to $1,750.00. A portion of plaintiff's testimony with respect to the settling of the building and its cause appears as follows:

"Q. And what sort of foundation did they put under the pillar? A. Well, they'd take the pillar and throw a little brick under there, no concrete at all. The pillar in one place went on down when they set the house down. That's the reason you couldn't level it.

"Q. Is that what caused the damage? Is that house still settling?

A. Yes. You can lay there at night and hear it popping.

"Q. Is the condition improving? A. It's getting worse.

"Q. Has it worsened even in the last few weeks? A. Oh, yes. You can hear it all through the night, popping.

"Q. How long has it been since they moved it, finished moving it? A. Something over a year, I don't remember exactly.

"Q. Is it worse now than the first month after they moved it? A. Oh, yes. It's still tearing up."

\* \* \*

"Q. You stated that the condition of the house is getting worse? A. Yes, sir."

Plaintiff's witness, Mr. A. L. Sneed, testified, in part as follows:

"Q. Is the condition improving, or staying the same, or getting progressively worse? A. It's getting worse. It appears to be that the house is settling and getting worse.

"Q. Is it still in a settling stage? A. Yes, sir.

"Q. Based upon your observation, and your experience, if it continues as it's going now, will it be substantially worse at a later date? A. Yes.

"Mr. Berry: We object to that on the ground that it's speculation.

"The Court: I sustain that."

It will be noted that the foregoing objection was sustained and the witness was not permitted to give his opinion as to how the building would be affected in the future; but there is other testimony in the record to the effect that the condition of the building was brought about by improper jacking, improper handling in moving, and settling due to lack of an adequate foundation.

Upon completion of the charge to the jury, the following transpired:

"The Court: Now gentlemen, under the statute and in the absence of the Jury, I must invite counsel to object to any charge that's already made and/or request any additional charges. What say the plaintiff?

"Mr. McLeod: We have neither any exception nor request.

"The Court: What say the Defendant?

"Mr. Berry: We have no exceptions. We do request that you charge the jury that they are not to take into consideration the fact that this building might sink further and further damage might be done, because this is for damages as of now.

"The Court: Let your record show I decline to charge that. I believe that would come, Mr. Berry, right much like a personal injury. You know you always charge in a personal injury case that if it be shown that it's reasonably certain that the plaintiff will continue to suffer injuries in the future, and you put a cash value on it and end it right now. Now, if they conclude that this place is going to continue to sink, wouldn't they be entitled to take that into consideration?

"Mr. Berry: We maintain, Your Honor, that there is no testimony that it will continue to sink, and of course we base that upon—that that was mere speculation—that the jury would find in that manner.

"The Court: Do you have any testimony on that, Mr. McLeod?

"Mr. McLeod: Yes, sir. The testimony is from several witnesses that the condition has grown progressively worse and it would be a matter—a reasonable inference to draw from the testimony that it will continue.

"The Court: Let Mr. Berry's request show in the record. I want to protect your record, but I'll decline to further charge on it."

All of the foregoing transpired in the absence of the jury and the statements complained of were made by the Trial Judge in giving his reasons for declining the request. An examination of the charge as given to the jury, however, reveals that they were not permitted to take into consideration such damage as might thereafter occur. After having

charged the jury, "You are to determine just what the condition of the building was before moving and what its condition is now, and just what award should be made in this case," he further charged:

"* * * So, in order to arrive at a verdict you ought to ask yourself this: Can this building be restored? Now, if you find that it cannot be restored, that it has been ruined, then you ought to award him the reasonable, fair market value of the building. Now, don't give it a sentimental value or a value under any special condition, just appraise it— what is its reasonable, fair market value. What would some one who wanted to buy that house pay for it? What would a man who wanted to sell it take for it? That's the way you arrive at a fair, reasonable market value.

"Now, if you find that it can be repaired, then you'd ask yourselves, what amount would it require to restore it to a condition such that it would be worth after the restoration as much as it was worth prior to the time that the Highway Department moved it.

"So, it just calls for plain, hard, common sense and hard facts to place a value on it.

"So, gentlemen, under no concepts are you to give a replacement value on what it costs to build a new building like this, because obviously, it is a used building and if you conclude that it's not restorable at all, you ought to give its reasonable fair market value, but not the cost you'd have to pay in order to build a new one."

The verdict of $8,000.00 was well within the testimony that before removal the building had a value of between $10,000.00 and $14,000.00 and after removal as having no present value. It does not appear from the record before us that the jury, which viewed the premises, had under consideration any damages other than those which naturally, logically, and necessarily flowed from the acts complained of. It is, therefore, unnecessary for the determination of this appeal to decide whether future settling of the building would constitute such damages as may be proven under a

general allegation of damages or special damages which must be specifically pleaded as set forth in *Crozier v. Charleston & W. C. Ry. Co.,* 222 S. C. 121, 71 S. E. (2d) 800, 805, wherein this Court stated:

"* * * A general allegation of damages will let in evidence and warrant recovery of all such damages as naturally, logically, and necessarily result from an unlawful act. Special damages, which do not necessarily result, must be alleged. The object of the requirement that a plaintiff should set forth any special damage is to avoid surprise to the other party. *Hobbs v. Carolina Coca-Cola Bottling Company,* 194 S. C. 543, 10 S. E. (2d) 25." See also *Henry Sonneborn & Co. v. Southern R. Co.,* 65 S. C. 502, 44 S. E. 77.

We find no error in the charge and are of opinion that all exceptions should be dismissed and the judgment appealed from affirmed; and It Is So Ordered.

Affirmed.

STUKES, C. J., and OXNER, LEGGE and MOSS, JJ., concur.