15124

HOBBS v. CAROLINA COCA-COLA BOTTLING CO.

(10 S. E. (2d), 25)

544

*Messrs. Raymon Schwartz* and *Williams & Stewart* for appellant,

*Messrs. A. M. Sapp* and *Gregory & Gregory,* for respondent,

July 9, 1940.

The opinion of the Court was delivered by MR. JUSTICE FISHBURNE.

Plaintiff brought this action for the recovery of damages alleged to have been suffered by him as a direct and proximate result of drinking a bottle of Coca-Cola manufactured by the defendant, which contained some "vile and/or poisonous, and/or polluted, foul, contaminated, and/or revolting substance or substances therein, which resembled and/or appeared to be decayed cockroaches, and/or other bugs, and/or

varmints and/or foul and unwholesome substances or materials, animal, vegetable, and/or mineral."

At the trial of the case the plaintiff obtained a judgment against the defendant for actual damages in the sum of $350.00, from which judgment this appeal is taken.

The bottle of Coca-Cola was purchased by the plaintiff for immediate consumption from Mackey's Drug Store at Heath Springs, South Carolina, on July 4, 1939. The plaintiff testified that when he had drunk about a fourth of the contents of the bottle he discovered that it did not taste right; it burnt his throat and spewed out of his mouth. He detected an odor issuing from the bottle; its contents were cloudy, but he did not know what "stuff was in the bottle." As a consequence of drinking the beverage he was immediately made ill, and he vomited in the lot behind the store.

The druggist, Mr. Mackey, said that he saw the plaintiff drinking the Coca-Cola, and that he immediately complained of it. He saw him gag and show every evidence of nausea. The Coca-Cola bottle and its contents were introduced in evidence, and this witness identified it as the same bottle sold to the plaintiff. He testified that the plaintiff had requested him to keep the bottle and its contents, and that it had been in his possession since July 4th, the day the plaintiff made the purchase. He also said that he detected an odor escaping from the bottle, and that the contents introduced in evidence were slightly darker at the time the bottle was sold than on the day it was introduced in evidence at the trial. This witness administered a dose of peppermint to the plaintiff, and Dr. Weatherby, a practicing physician of Heath Springs, treated the plaintiff the next day. Several other witnesses present in the store at the time the plaintiff drank the Coca-Cola, and who saw him drink it, corroborated his testimony. Evidence for the plaintiff tended further to show that he suffered severe cramps in the stomach, was ill about a week, and lost nine pounds in weight which he has never regained. Plaintiff testified that he had never

been sick a day for eight years previous to the time he drank the Coca-Cola.

Testimony for the defendant tended to show, in accordance with the allegations of the answer, that its bottling plant was at the time in question and prior thereto modern and efficient in every respect, being equipped with the latest improved machinery; that the bottling process, including the most thorough cleansing of the bottles, as well as the filling thereof, is carried on by such a scientific and perfect mechanical method as to eliminate the possibility of error. The defense testimony tended further to show that the manufacturing process from its beginning to the end was accompanied by the most rigid and most searching inspection by expert employees, and that the plant was double screened against flies and insects. The bottle in question having been introduced in evidence, the defendant had one of its witnesses pour out some of the contents into a glass, and in the liquid were found some decomposed peanuts in a fermented condition, which gave off an odor.

The first question presented by the appeal is: Where a complaint alleges damages for personal injury and humiliation by drinking a nonalcoholic beverage containing foreign or deleterious matter, is testimony properly admissible to prove that the plaintiff hired another to do his work while he was incapacitated, and that he paid him a sum stated therefor—where not specifically alleged in the complaint as elements of special damage?

There is no allegation in the complaint that the respondent's business was damaged by reason of his personal injury, or that it was necessary for him to employ someone to conduct his business during his disability. The damage alleged is for humiliation, injury to health and digestion, impairment of taste for certain foods and drinks, and injury to general physical condition, and that by reason of the injuries sustained plaintiff continued to suffer for a considerable length of time.

Over objection, the plaintiff was permitted to testify that by reason of his physical indisposition he had to employ someone to do the work he ordinarily did, for a period of four weeks at the rate of $40.00 per week, and in addition that he had to pay mileage on one car, amounting to from $6.00 to $15.00 per week.

The Court ruled that the testimony above referred to was admissible as showing what expenses the plaintiff incurred as a result of his inability to work. Appellant concedes that, without being pleaded, the plaintiff's expenses for medical attention, hospitalization and medicine would be proper items of general damage, but contends that unless specially pleaded no expense which the respondent incurred by reason of employing another person to do his work or to attend to his business would be admissible.

It is generally agreed that a general allegation of damages will suffice to let in proof and to warrant recovery of all such damages as naturally, logically and necessarily result from the unlawful act complained of; the law implies such damage. But where damages do not necessarily result from the act complained of, and consequently are not implied by law, the plaintiff must state the particular damage sustained in order to introduce testimony in regard to it. The rule is to avoid surprise. *Sonneborn & Co. v. Southern R. Co.*, 65 S. C., 502, 44 S. E., 77; *Lipscomb v. Tanner*, 31 S. C., 49, 9 S. E., 733, 15 Am. Jur., Section 305, page 747.

Expenditures for the hiring of a substitute while a complainant is disabled because of a personal injury are regarded as special damages, which must be alleged in order to be proved.

A case directly in point on this principle is that of *Gumb v. Twenty-Third Street Ry. Co.*, 114 N. Y., 411, 21 N. E., 993. The action in that case was brought against a street railway company for negligently striking plaintiff's wagon and overturning it, whereby he was injured and the wagon

broken. The complaint did not allege as special damages that the plaintiff was compelled to employ others to work in his place. The Court held that it was error to permit him to prove that he hired others to do this work, and that he paid them a sum stated therefor, as such damages did not necessarily and immediately flow from the injury.

In the case at bar, it is nowhere alleged in the complaint that the plaintiff was employed or engaged in any business or that he incurred expense in hiring another to work in his place. In our opinion, the testimony objected to tended to prove special or consequential damages which did not necessarily result from the injury complained of, and which the law does not imply as the result of that injury. Such special damages must be particularly specified in the plaintiff's pleading, except where they are conclusively presumed from the facts stated.

A sound statement of the rule is found in 15 Am. Jur., Section 5, page 749: "To warrant a recovery of damages not specially pleaded, they must be the necessary result of the wrongful act pleaded as the foundation of the liability asserted—that is, they must follow as a conclusion of law from the facts stated. It is not sufficient to show that they are the natural result of the injury or that they followed it in point of time. Damages for losses that are the natural and proximate, but not the necessary, result of the injury may be recovered only when such special damages are sufficiently stated and claimed."

To sustain the action of the trial Judge, plaintiff cites the case of *Jeffords v. Florence County,* 165 S. C., 15, 162 S. E., 574, 578, 81 A. L. R., 313. In that case the complaint alleged that the plaintiff suffered damages "to his person and property." The plaintiff introduced evidence tending to show damages to his automobile and evidence of the loss of a suit of clothes. The defendant objected to evidence showing damage to the clothes. The Court said:

"True, he does not specify the suit of clothes, but he testifies that he was thrown through the windshield and that his clothes were ruined"; and the Court said further,

"He asks for a compensation for injuries to his person and damages to his property. Clothes are property."

The introduction of evidence was held to be competent, but the facts in that case are essentially different from those alleged here. In the *Jeffords case* the direct allegation was made of injury to property. But in the instant case there was no suggestion by allegation that the plaintiff operated any business, or that he had expended any amount for the employment of another person to do his work.

We cannot tell from the verdict whether or not the jury awarded anything for the expenditures for substituted labor and mileage for his car, and cannot say that the damages were not increased by allowing this inadmissible testimony; and since this element of damage may have been considered by the jury, and presumably was, and may have led to increasing the amount of the verdict over what otherwise would have been allowed, we have no alternative but to reverse the judgment and remand the cause for a new trial.

Only two issues were submitted to the jury; First, whether or not the Pure Food Statute, Section 1452, Code 1932, had been violated by the appellant; and, second, whether the appellant was guilty of negligence in its failure to properly inspect.

We may say here, as was said in *Gantt v. Columbia Coca-Cola Bottling Company,* 193 S. C., 51, 7 S. E. (2d), 641, 643, 127 A. L. R., 1185, that "we have examined the entire record with painstaking care, and we do not hesitate to say that apart from the application of the Pure Food Statute * * * there is not a vestige of evidence of negligence to be found in the case, and that but for this statute a verdict should have been directed for the defendant company." The

record is void of evidence, circumstantial or direct, tending to show negligence, apart from the statute.

The case of *Gantt v. Coca-Cola Bottling Company, supra,* contains a full review of previous cases, and reaffirmed the rule as announced in *Tate v. Mauldin,* 157 S. C., 392, 154 S. E., 431, 433 : "If a manufacturer of a food product disobeys the prohibition or neglects to perform the duty imposed by a pure food statute, negligence is implied from such violation or neglect, and he is liable for injuries resulting from the unwholesomeness of such food product regardless of his knowledge of its unwholesomeness."

As was said in the *Gantt case* : "The violation of the Pure Food Statute, Section 1452, is negligence *per se,* and hence sufficient to require the submission of the question of negligence to the jury, even where there is no other evidence of negligence. * * * But of course, * * * this does not preclude a plaintiff from also introducing other evidence of negligence."

The Pure Food Statute provides : "The term 'food' as used herein, shall include all articles used for food, drink, confectionery, or condiment by man or other animals, whether simple, mixed, or compound." Section 1452, Subsection 1. And further provides, in Subsections (2), (6), that an article shall be deemed to be adulterated : "If it consists in whole or in part of a filthy, decomposed or putrid animal or vegetable substance, or any portion of an animal unfit for food, whether manufactured or not, or if it is the product of a diseased animal, or one that has died otherwise than by slaughter."

Under the law, neither knowledge of the contamination nor negligence in fact is a material element of the offense. The complaint charges a violation of the Pure Food Statute, and it follows, as we have said, that evidence tending to show a violation of the statute, or negligence *per se,* would require the submission of the case to

the jury, so far as negligence is concerned, although there was no other evidence of negligence, either direct or circumstantial.

It is not disputed that the bottle of Coca-Cola in question was bottled and sold by the defendant company, and it may be reasonably inferred from the evidence that it contained at the time of the sale and delivery thereof to the plaintiff foreign or deleterious matter, viz.: Filthy, decomposed or putrid peanuts. A reasonable inference likewise arises from the evidence that as a consequence of drinking the Coca-Cola containing the foreign and deleterious matter, the plaintiff was immediately made extremely sick. There is no suggestion in the evidence that the peanuts had been placed into the bottle subsequent to the sale of the Coca-Cola to the plaintiff.

In our opinion, the Circuit Court committed no error in overruling the defendant's motion for a nonsuit, directed verdict and new trial, all of which were based upon the general grounds that there was no evidence of a violation of the Pure Food Statute, and no evidence tending to show that the substance in the Coca-Cola bottle was deleterious or injurious to health.

But a new trial must be granted because of the admission of the incompetent evidence introduced over the objection of the defendant relating to special damages not pleaded.

Judgment reversed, and case remanded.

MR. CHIEF JUSTICE BONHAM, MESSRS. JUSTICES BAKER and STUKES and MR. ACTING ASSOCIATE JUSTICE L. D. LIDE concur.

MR. JUSTICE CARTER did not participate in the decision of this case.