### SHAPIRO v. YELLOW CAB CO. et al.
### Civil Action No. 5303.

District Court, E. D. Pennsylvania.

Jan. 30, 1948.

Joseph S. Lord, III, of Richter, Lord & Farage, all of Philadelphia, Pa., for plaintiff.

James J. Leyden, of Schnader, Kenworthey, Segal & Lewis, all of Philadelphia, Pa., for Yellow Cab Co.

Philip Price, of Barnes, Dechert, Price, Smith & Clark, all of Philadelphia, Pa., for railroads.

GANEY, District Judge.

This is a motion for a new trial under Rule 59 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, by the plaintiff in an action in which she seeks damages for injuries sustained by her as the result of the alleged negligence of the defendants [1] which are common carriers. This court has jurisdiction because diversity of citizenship exists between the parties. The case was tried before a jury which rendered a verdict for the defendants.

The motion is based on the ground that this court erroneously instructed the jury that it could not consider certain facts which appeared from the evidence; and that these facts, if considered and believed by the jury, could have supported a verdict for the plaintiff.

At the trial there was evidence to support the following facts: On the evening of Memorial Day of 1945, the plaintiff entered a taxicab, owned and operated by the defendant cab company, in front of her sister's home in Philadelphia, Pennsylvania, and with the intention of boarding a train, she directed the driver to proceed to the North Philadelphia Station, over which the defendant railroad company had exclusive control. For many years the plaintiff had been suffering from the effects of infantile paralysis which had paralyzed most of the muscles of her left hip and leg. This caused her to walk with a marked limp which was apparent to the driver of the taxicab. The taxicab arrived at the station at about 9 P.M. when a number of vehicles were conveying people to or from the station. Awaiting their turn to take on or discharge passengers, cars were parked momentarily two rows deep near the passenger loading platform, the usual stopping place, where the doors leading to the station proper were located. The taxicab came to a stop parallel to and about eighteen inches to the left of another car parked in the middle of the macadam paved driveway leading to the passenger platform. The position of the taxicab was about ninety feet short of the lighted marquee or canopy which extended out over the passenger platform and part of the driveway. At this point, which was almost totally dark, the driver of the taxicab "threw" the meter, switched on the inside ceiling light, said to the plaintiff, "Here we are," opened his door on the left side of the taxicab and proceeded to walk toward the rear of the taxicab. The plaintiff testified that she waited a few minutes for the driver to come around to open the door and that when he did not appear, she opened the door and started to alight; that when she stepped out of the cab door, her left foot slipped into a hole about three to four inches deep in the driveway which caused her to fall to the ground and sustain injuries. As the driver of the taxicab was approaching the right side of the taxicab, he saw that the right rear door was open. Because of the fact that the open door was against the nearby car, the driver was not able to pass between the vehicles without partly closing the opened door of the cab. When he pushed the door, partly closing it, he saw the plaintiff on the ground. He assisted her back into the taxicab and immediately drove up to the platform under the marquee where he received instructions to take the plaintiff to Temple Hospital—which was not too far away from the station.

The explanation given by the driver for stopping where he did instead of waiting until he had an opportunity to drive near the passenger platform was that he concluded that the plaintiff was in a hurry to catch her train, whereas if he had waited a few seconds, he could have gotten near the passenger platform. He also testified on behalf of one of the defendants as follows: "I don't remember if it was immediately after it happened or immediately after she got into the cab, but she did make the statement to me she had reached out and took hold of the handle of the car parked parallel to the cab and the handle gave way * * * and she went down." Moreover, in a written report to his superiors, a supervisor of the defendant cab company stated: "The injured said that it was

---

[1] At the trial, all parties agreed that no liability on the part of a third defendant, which the plaintiff had joined out of an abundance of caution, was shown.

the driver's fault because he pulled too close to the car parked to the right of the cab. * * *" This report was introduced into evidence by the cab company.

 A common carrier owes to its passengers the highest degree of care, vigilance and precaution in transporting them to their destination and enabling them to alight safely. Hughes v. Pitts. Transp. Co., 300 Pa. 55, 150 A.2d 153; Lyons v. Pitts. Rys. Co., 301 Pa. 499, 152 A. 687; O'Malley v. Laurel Lines Bus Co., 311 Pa. 251, 166 A. 868. As a consequence of this rule, a common carrier which knowingly permits a passenger to alight at a dangerous place, before reaching the usual or regular stopping place, and the dangerous character of which the passenger could not see and did not know, is liable for injury sustained by that passenger. Sowash v. Consolidated Traction Co., 188 Pa. 618, 41 A. 743; O'Malley v. Laurel Lines Bus Co., supra; McCollum v. Pitts. Rys. Co. (No. 1), 51 Pa.Super. 637; Gourley v. P. T. C., 100 Pa.Super. 419. Under such circumstances, the carrier is required to warn and assist the passenger in alighting. Miller v. Lehigh Valley R. Co., 290 Pa. 130, 138 A. 89. This is especially true where the passenger is under a physical disability of which the carrier is aware. See: Warren v. P. & B. Ry. Co., 243 Pa. 15, 89 A. 828; Jameitis v. Wilkes-Barre Ry. Co., 277 Pa. 437, 121 A. 317. In addition "It [is] the duty of the carrier to furnish a safe and sufficient means of ingress to and egress from its trains, and to exercise 'the strictest vigilance' in protecting intending passengers, assembled at its stations, from liability to injury." Coyle v. Philadelphia & R. Ry. Co., 256 Pa. 496, 499, 100 A. 1005, 1006; Greenfield v. Pitts. & Lake Erie Ry. Co., 305 Pa. 456, 157 A. 587; Cestaric v. Pennsylvania Greyhound Lines, 3 Cir., 139 F.2d 566. This includes the duty to keep the driveways and approaches to the station properly lighted when necessary. Powell v. Philadelphia & Reading Ry. Co., 220 Pa. 638, 645, 70 A. 268, 20 L.R.A.,N.S., 1019.

 In her complaint, the plaintiff averred that on May 30, 1945, the defendant railroad company negligently allowed a hole to exist in the driveway leading to its station; and that a taxicab, owned and operated by defendant cab company, conveyed her to the aforementioned driveway and negligently permitted her to alight on the hole, causing her to sustain injuries. These were the sole facts upon which the negligence of the defendants was predicated. However, as we have indicated, there was, at the trial, evidence, aside from the possible existence of a hole, from which the jury could have found the defendants to be negligent and that such negligence was the proximate cause of the injuries sustained by the plaintiff. This evidence was introduced either by the plaintiff, without objection, or was produced by the defendants. In accordance with Rule 15(b) of the Federal Rules of Civil Procedure, the issues of fact raised by the evidence, although not raised by, should have been treated as if they had been raised in, the pleadings; Venuto v. Robinson, 3 Cir., 118 F.2d 679; Scott v. B. & O. R. Co., 3 Cir., 151 F.2d 61; Globe Liquor Co. v. Roman, 7 Cir., 160 F.2d 800; Stafford v. R. T. Co., D.C.W.D.Pa., 70 F.Supp. 555; Nester v. Western Union Telegraph Co., D.C.S.D.Cal., 25 F.Supp. 478; 1 Moore's Federal Practice, Sec. 15.07. Consequently the jury should have been allowed to consider all the evidence in reaching its verdict. However this court unduly restricted them.

Motion granted.