## ZIG ZAG SPRING CO. v. COMFORT SPRING CORP. et al.

### No. 10797.

United States Court of Appeals
Third Circuit.

Argued Nov. 21, 1952.

Decided Jan. 9, 1953.

Stephen P. Piga, Jersey City, N. J., George Yost, Baltimore, Md., for appellants.

Joseph Keane, Jersey City, N. J. (Milton, McNulty & Augelli, Jersey City, N. J., Thomas McNulty, Jersey City, N. J., William Bannon, Jersey City, N. J., on the brief), for appellee.

Before McLAUGHLIN, KALODNER and STALEY, Circuit Judges.

McLAUGHLIN, Circuit Judge.

In this replevin suit plaintiff obtained a judgment against defendants which included punitive damages and defendants appeal.

The amended complaint alleged that prior to May 24, 1948, plaintiff was the owner of two spring manufacturing machines valued at $15,000 each; that from early in April, 1948, to about June 8th of that year plaintiff was negotiating with the defendant Maryland corporation for the sale of three such machines to the latter concern; that during that period, for the purpose of demonstrating the operation of the machines to the defendants, plaintiff delivered three machines, including the two above mentioned, to the defendant New York corporation at its Jersey City, New Jersey, plant; that title to the machines was to

remain in plaintiff unless and until a contract of sale was executed and in the event no such agreement was entered into " * * defendants would return said machines to plaintiff."

Continuing, the complaint states that one of the machines was returned to the plaintiff; that on or about June 8, 1948, the negotiations with the Maryland company for the sale of the remaining two were terminated without a contract being consummated; that plaintiff is entitled to immediate possession of the machines; that demands for same have been made upon the defendants; that the defendants refused to deliver them and wrongfully detain them. Possession of the machines and damages for their unlawful detention were demanded.

The second count specifically alleges that, after the demands for possession had been made, the Maryland defendant, through its control of the New York defendant, had the latter ship the machines to it in Baltimore " * * * for the purpose of delaying, harassing and obstructing the court action * * *" which the letters from plaintiff's attorney demanding return of the machines indicated would be brought. In the alternative plaintiff also sued for the purchase price of the machines and for their reasonable value. The original complaint had demanded special damages arising out of loss of a sale by plaintiff of the two machines held by defendants. That claim was withdrawn through a stipulation between the parties entered into prior to the filing of the amended complaint. Suit was started on June 29, 1948. Initially the New York corporation was the sole defendant. Later, by leave of the court, the Maryland company was joined as a defendant in the amended complaint. The action is in the federal court by reason of diversity of citizenship.

The trial of the case commenced March 12, 1952. Plaintiff's attorney, in his opening to the jury, charged malice on the part of the defendants in the taking and detention of the machines. Speaking of that

assertion the defense attorney stated to the court that " * * * the special damage request has been taken out of this case by the plaintiff itself; there shouldn't be any opening on that phase at all." Plaintiff's attorney explained that the stipulation had merely eliminated special damages from the loss of the sale of the machines to a third party and that the reference in the opening had been to what was actually punitive damages. The court asked counsel for the plaintiff if he still relied " * * * upon the wilfulness of the alleged misappropriation * * *." Counsel replied, "That's right." The court said, "It doesn't make it special, it makes it punitive." Counsel for the plaintiff agreed and continued with and completed his opening without further comment from the defense. After the conclusion of the trial, the court by order allowed the formal amendment of the complaint that it might conform to the evidence. The amendment consisted in adding to the appropriate paragraphs of the first two counts the words "and maliciously", so that the particular phrase as amended read "wrongfully and maliciously detains them."

Appellants contend that order was error because it allowed " * * * a claim for punitive damages which is neither set forth in the original complaint nor supported by the evidence * * *."

The record fails to uphold that argument. Though punitive damages were not expressly claimed the complaint presented an adequate foundation for proof of malicious misappropriation by the defendants. From the introductory paragraph of the opening on behalf of the plaintiff that element was stressed. It was plaintiff's basic trial theory. Counsel for the defense did comment, as has been stated, on what was said for the plaintiff regarding alleged malicious conduct of the defendants and in the defense opening the jury was told that the suit was a simple contract action with no punitive damages involved. Defense counsel also took exception to the trial court's charge as to punitive damages.[1]

[1.] The defense summation apparently was not transcribed. In any event it is not included in the appendix.

But there was no objection made to plaintiff trying its case on its theory of punitive damages. In particular, no surprise was pleaded, nor was there any request for a continuance. As counsel for appellant stated at the oral argument on this appeal, the defense knew all the evidence and there was no surprise as to that. It would seem that the situation really resolved itself into a difference of opinion as to what the evidence revealed, the defense thought at the trial being, as it is now, that it did not justify punitive damages. The defense conception of the transaction was and is that an entire contract for three machines had been entered into with the plaintiff and that as part of that arrangement there was to be a protective personal guarantee to the defendants by the Ross brothers (who controlled plaintiff corporation) against patent infringement suits. That contract, argues the defense, justified the removal of the two machines to Maryland; justified their retention for four years without any payment whatsoever to the plaintiff, though during that time, as might be inferred from the evidence, they made a profit of $55,000 from their use of the machines.

The order of the trial court allowing malicious detention to be formally added to the complaint was proper. The facts and conclusions in the complaint, plaintiff's opening and its whole trial course thereafter, all unobjected to by the defense, were directed to the obtainment of punitive damages because of the malicious misappropriation of its property by the defendants. The order was directly authorized by Rule 15(b) of the Federal Rules of Civil Procedure, 28 U.S.C. That rule is captioned "Amendments to Conform to the Evidence". The last sentence of Paragraph (b) reads: "The court may grant a continuance to enable the objecting party to meet such evidence." Here, such continuance was not necessary or requested because, as conceded, the defense was not surprised by the evidence—their point was and is that it did not constitute a proper ground for exemplary damages.

2. Nor does either side dispute the applicability of the Uniform Sales Act as

It is undisputed, as alleged in the complaint, that the machines were delivered to the New Jersey plant of the New York corporate defendant. According to the plaintiff, they were delivered for demonstration purposes. If no contract was entered into they were to be returned to the plaintiff. While neither party expressly states that New Jersey law governs the punitive damage test to be applied in this matter, they both rely on the leading New Jersey case on the subject.[2] That decision is Dreimuller v. Rogow, Sup.Ct.1919, 93 N. J.L. 1, 107 A. 144, which also a replevin suit The defense there argued, and a similar contention is urged in the present case, that plaintiff's recovery should have been limited to the value of the goods taken and the damages sustained by their detention. The Supreme Court of New Jersey, in upholding the trial court's submission to the jury of the question of punitive damages and a verdict thereon, said at page 3 of 93 N. J.L., at page 145 of 107A. "The right to award exemplary damages primarily rests upon the single ground—wrongful motive; and, when the personal intent to injure is shown, the penalty may be inflicted."

Appellants' next point is that the refusal to charge certain of their requests was error. Defense request #4 on behalf of the New York company and #5 for the Maryland defendant would have removed plaintiff's claim for punitive damages from consideration by the jury. These were properly denied by the trial court for the reasons already indicated.

The Maryland defendant's request #8 read as follows:

"If you find from all of the evidence and circumstances in this case that plaintiff corporation and the Maryland corporation entered into a binding agreement on June 2, 1948, under which the plaintiff corporation agreed to sell and the Maryland corporation agreed to buy three Zig Zag machines for the sum of $45,000, I charge you that that binding agreement constitutes an entire contract and that, therefore,

adopted in New Jersey, R.S. 46:30–1 et seq., N.J.S.A.

the plaintiff corporation has no right to recover either the price of two machines or the value thereof under the third and fourth counts alleged in the complaint."

■ That request is wrong in law. Even under appellants' conception of the transaction, the Uniform Sales Act, as adopted in New Jersey, R.S.N.J. 46:30–50(1), N.J.S.A.,[3] does not permit a buyer to retain a quantity of goods less than he contracted to purchase and not pay for them at the contract rate. And there is no evidence that there was any special agreement between the parties, as provided for by Paragraph (4) of R.S.N.J. 46:30–50,[4] which would take the arrangement out of the control of Paragraph (1). The record is barren of proof that plaintiff ever consented to either or both defendants' keeping the machines, using them profitably and not paying for them.

■ The defense also urges that the refusal of the court to charge the Maryland company's request #11 was error. That request left to the jury, under the evidence and circumstances of the case, whether or not the machines were " * * in operating condition * * *." It provided that if the jury found they were not and that the Maryland company lost their use because of that reason " * * * the Maryland corporation is entitled to recover from the plaintiff corporation the loss of profits on the products which such machines or machine would produce from June 2, 1948, *to the present time* based upon orders for such products given to the Maryland corporation or available to it in the market." (Emphasis supplied.) The court refused to so charge because there was no proof that the machines were not in good

operating condition. This is borne out by the record. The witness relied upon by the defense to substantiate that charge said regarding plaintiff's machine, "It is a very smooth machine, very smooth moving machine, it is a fine piece of equipment." A reading of his testimony shows clearly that his trouble with the machines arose from his complete unfamiliarity with them. He had never seen or operated a spring wire machine prior to his experience with those of plaintiff. He had never worked in the spring business before. He had no previous training in spring wire machines. He had never examined any of the patent papers of the machine. While working with plaintiff's machines he had no written information concerning their construction and function. Nor did he ever see such a statement until, during the trial of this suit (the night before he testified) Rymland, the person in control of the defendant corporations, showed him a letter from the plaintiff which gave the salient features and basic functions of its machine. As the trial court said, in construing the evidence of this witness, "They experienced difficulty with them [the machines] but he said they were good machines. The difficulty seemed to have been attributable to other causes." For that reason alone the trial court's refusal to charge the request was correct. In addition, the request, as worded, was palpably wrong in allowing damages up to the date of trial whereas there was no proof that the loss of use of the machines and of profit because of that loss of use had continued throughout that whole time.

Appellants next argue that "The jury's finding of punitive damages contained in its verdict shows influence of passion, prejudice, partiality and mistake so wide

3. Paragraph (1) of R.S.N.J. 46:30–50, N. J.S.A., reads as follows:

"Where the seller delivers to the buyer a quantity of goods less than he contracted to sell, the buyer may reject them, but if the buyer accepts or retains the goods so delivered, knowing that the seller is not going to perform the contract in full, he must pay for them at the contract rate. If, however, the buyer has used or disposed of the goods delivered

before he knows that the seller is not going to perform his contract in full, the buyer shall not be liable for more than the fair value to him of the goods so received."

4. Paragraph (4) of R.S.N.J. 46:30–50 reads as follows:

"The provisions of this section are subject to any usage of trade, special agreement, or course of dealing between the parties."

in scope as to vitiate the entire verdict." The amount of punitive damages awarded was $110,000. The trial judge, on motions for a new trial, reduced this to $30,000 which was accepted by plaintiff in lieu of a new trial for damages only.

The court charged thoroughly and fairly with respect to punitive damages.[5] After the jury had retired to consider its verdict it returned to the courtroom and asked the trial judge, "Will there be, or is there any limit legally as to punitive damages?" The court thereupon again carefully gave the jury the principles of awarding punitive damages. As to the damages themselves, he said they " * * must be just and reasonable. You are instructed that any award of punitive damages which would be found to be excessive under the circumstances, would have to, under the law, be set aside. Therefore, if you determine that the plaintiff, under the instructions that I have given to you, is entitled to recover punitive damages, the award thereof must be just and reasonable in the light of the facts and circumstances of the case." He illustrated with an example of compensatory and punitive damages awarded in an assault and battery case where the injuries were slight. He advised the jury that in that type of claim where there was an award of $100 for compensatory damages

for a minor injury, $5,000 for punitive damages would be unreasonable on the face of it and " * * * if I had such a case I would promptly set that aside as unwarranted." In conclusion, he told the jury that " * * * like any other award [it] cannot be prompted by passion or prejudice of any kind, it must remain within reasonable standards so that in conscience you can say that it is just and reasonable and the Court if called upon later to set it aside can in conscience say that it is just and reasonable." There was no exception taken to this for the defendants.

The jury found that $30,000 was the value of the two machines at the time of taking. It also found $6,750 interest and, in connection with repossession, $9,000 depreciation. There had been proof that the defendants did not use the machines until after plaintiff had successfully contested a suit alleging the invalidity of the patents for the machine. And there was testimony from which it could have been concluded that plaintiff had incurred $12,000 expenses in defending that action and that the present defendants had not helped defray that cost. There was also evidence which has been mentioned in part, to the effect that the product manufactured by the defendants with plaintiff's machines had resulted in $300,000 in sales, including

5. The court said on this point:

"Now, the plaintiff further asserts a claim for exemplary or punitive damages. This claim is based not only on the allegation that the machines were unlawfully withheld and detained by the defendant but also that the conduct of the defendant was accompanied by a wilful and malicious intent to oppress and injure the plaintiff. You are instructed that you may, in the exercise of your discretion as the triers of the facts, award such damages only if you find from the evidence and the inferences of which the evidence is reasonably susceptible, first, that the defendant or defendants—and here I include both because both may be guilty if you so find—withheld and detained the property of the plaintiff, and, second, that the unlawful intention was accompanied by a wilful and malicious intent to oppress and injure the plaintiff. An award of ex-

emplary damages may not be made unless you so find. Therefore if you determine that the defendant or defendants acted in good faith in the detention of these machines and were not guilty of any malicious motive or intent to injure and oppress the plaintiff, then it necessarily follows that you may not award exemplary damages.

"You are further instructed that an award of an exemplary or punitive damage represents the imposition of a penalty as punishment for a wilful and malicious wrong. The plaintiff is therefore not entitled to recover such damages as a matter of right; such damages, however, may be awarded by the jurors if in their judgment the defendant has been guilty of wilful and malicious conduct, and such award you determine to be proper and right in the interest of justice. The claim for punitive damages is addressed to your sound discretion."

$55,000 in profits to the defendants, in less than three years. There is some arguable inference that such production had resulted favorably to the general business of the defendants.

■ The exemplary damages were by way of punishment to the defendants. Because of their very nature the court could only give the jury a general rule for its guidance in dealing with them. The jury, having decided to award such damages, and in an evident desire to fix a proper amount, sought further advice from the court. Once more the court did the best that could be done under the circumstances by repeating the principles involved and including an illustration of what would be unreasonable punitive damages and how it would handle that sort of verdict. From that instruction the jury can be assumed to have understood that if it did unwittingly fix too high an amount the court, exercising its experienced judgment, would see to it that such error was corrected. And the court did just that in reducing the jury figure to $30,000. Under all the circumstances we do not think that the amount of punitive damages originally awarded by the jury shows the partiality, prejudice or passion which would nullify its entire verdict.

Lastly, appellants contend that "The jury's verdict omitted a finding on the issue of value of the property, which the trial court was not empowered to supply and, therefore, the Order Molding the Verdict was erroneous and the judgment based thereon should be set aside."

Because the issues were rather complicated, the court, in order to simplify the jury's task, drafted a form covering the possible verdicts for the jurors' guidance as to various aspects of their verdict and for use in reporting it. This procedure was in accordance with Rule 49(a) of the Federal Rules. The form was carefully checked by counsel for both sides with the court and after that counsel for the defendant said to the court regarding it, "I frankly think this helps the jury and this Court; I agree with it thoroughly." Following the charge, the court explained the form to the jury. Later, in announcing the verdict from the filled in written form, the jury foreman stated, "We find the plaintiff is entitled to recover the possession of the machines and the sum of $9,000.00 which represents the depreciation thereof during the period of detention; together with interest thereon in the amount of $6,750.00; and punitive damages in the amount of $110,000.00." He did not read the amount of the value of the machines, namely, "$30,000.00" which had been inserted, as part of its verdict, by the jury in the typed form. The court thereafter, on motion, amended the verdict to include the valuation of the machines as determined by the jury.

■ We fully agree with that action. It involved no guessing as to what the jury meant or did. $30,000 had been the valuation placed on the machines as of the time of their taking by the uncontradicted evidence. By the charge the jury had been directed to decide on the value of the machines and to include that figure in its verdict. With the affirmative assent of both sides the jurors had been told to use the form prepared by the court so that they would not overlook any of the various necessary elements of the verdict. The jury did this and as a part of its verdict fixed and noted on the sheet its estimate of the worth of the machines. That finding was made on an issue which had been pleaded, tried and eventually submitted to the jury. It was sufficient and responsive. The court rightfully recognized this in allowing the formal amendment to the verdict as had been announced by the jury foreman.

### Appellants' Motion

■ There is also pending before us a motion on behalf of appellants to set aside the judgment in this case and allow appellants a new trial on the ground of newly discovered evidence. Appellants' brief on the motion in addition to asking us for a new trial alternatively urges that we permit the trial court to consider the motion. This latter request is in accord with the proper practice and we will pass upon the motion in that light. Baruch v.

908

Beech Aircraft Corporation, 10 Cir., 1949, 172 F.2d 445.

■ The motion was argued at the same time as the appeal. In that situation we should not remand the case without a decision on the merits unless we can say that the alleged newly discovered evidence properly so qualifies and that it is of such character " * * * as to make it reasonably apparent that with the facts before it the trial court would be disposed to grant a new trial." Baruch v. Beech Aircraft Corporation, supra.

The tendered newly discovered evidence is that of a former salesman and sales manager of appellee, one Sudy. The affidavit filed by appellee on the motion states that appellee terminated Sudy's employment April 30, 1950, at which time Sudy became angry at Zig Zag and that since then he has engaged in acts and conduct harmful to it.

Sudy, in his affidavit, claims to have been with Percy Ross on April 11th or 12th, 1948, calling on some Zig Zag accounts. "On this particular day * * *", he asserts, they stopped at National Furniture Company where Ross talked on the telephone with Rymland of Comfort Spring and, according to Sudy, for Ross brothers guaranteed Comfort Spring against patent infringement in respect to the machines which Zig Zag later shipped Comfort.

Both Ross and Rymland testified to that conversation at the trial. Ross denied that he had ever had any talk with Rymland about Ross brothers guaranteeing the machines or that he had ever had any talk with Rymland that would have led the latter to believe that Ross brothers and Zig Zag were the same thing. Rymland on the witness stand said that the particular telephone talk took place " * * * about 11:00 or 12:00 o'clock at night." Rymland said that he received the call at Baltimore. Ross talked from Los Angeles. This would have made the California time of the call 8:00 or 9:00 P.M. Rymland said he asked Ross, "Well, who is going to guarantee the patents? Zig Zag isn't worth a great deal." According to Rymland, Ross answered, "Ross Brothers. After all, we are worth something. Zig Zag is not our only interest. We will guarantee the machines."

■ Assuming for purposes of argument that sufficient excuse can be shown for non-production of the Sudy evidence at the trial and until now, the proposed testimony is clearly cumulative. It is contradicted on an important point (the time of the talk) by the main defense witness. Sudy's credibility is seriously attacked by appellee. It is not probable that the testimony would produce a different trial result. The motion is denied.

The judgment of the district court will be affirmed.