Arthur W. NIEDLAND and Margaret W. Niedland

v.

UNITED STATES of America, Appellant.

No. 14829.

United States Court of Appeals Third Circuit.

Argued June 3, 1964.

Decided Nov. 5, 1964.

As Amended Dec. 10, 1964.

Rehearing Denied Dec. 10, 1964.

Snellenburg, II, Wilmington, Del., on the brief), for appellee.

Before BIGGS, Chief Judge, and HASTIE and GANEY, Circuit Judges.

BIGGS, Chief Judge.

The plaintiff-appellee, Arthur W. Niedland, sustained injuries to his back when a car which he was driving was driven into by a Post Office vehicle operated by an employee of the United States. He sued the United States under the Federal Tort Claims Act, 28 U.S.C. § 1346(b). His wife, Margaret, sued for loss of consortium. The United States conceded liability. Niedland's damages were fixed at $9,463, and Mrs. Niedland's at $750. The United States has appealed the judgment in favor of Niedland seeking a new trial or to reduce the award for the reasons stated hereinafter.[1]

The trial court found the following on ample supporting evidence. Niedland received a whiplash injury to his back and particularly to his neck. This injury was a moderate one, neither light nor severe. Following the accident he could lie down in bed only with difficulty. Two days after the accident, while still suffering pain, discomfort, extreme constriction in his neck and back, and headaches, he consulted an orthopedic surgeon. The surgeon diagnosed his condition as a sprain or strain of the muscles and ligaments of the spine, and sent him to the Delaware Curative Workshop for therapy. At the end of four months Niedland's condition had improved to the point where he was discharged from further treatments at the Workshop. At the time of the trial, in the words of the court below, "[H]e seems still to be suffering intermittent headaches and some restriction of movement in his back and neck." The trial court stated: "It is highly unlikely that his injury is permanent and it should gradually disappear.", and to "recover completely he must cease babying himself."

Stanley C. Lowicki, Wilmington, Del. (Alexander Greenfeld, U. S. Atty., D. Del., on the brief), for appellant.

Theodore F. Sandstrom, Killoran & Van Brunt, Wilmington, Del. (David

---

1. Mrs. Neidland's award was not appealed.

Prior to his accident Niedland owned the franchise to, and was the sole operator of, the Arthur Murray School of Dancing in Wilmington, Delaware. He both managed the school and taught dancing. He employed three to four instructors. Niedland's teaching of pupils and his training of instructors required him to keep abreast of all current dances and also to be in good physical condition since he had to be able to execute the violent twists and turns called for by modern dance routines. Niedland, claiming to be too ill and restricted in his movements to teach, hired a male assistant to whom he paid about $10,000 annually. For some time prior to the trial Niedland had been averaging only about two hours per day in his studio and on many days did not go there at all, leaving most of its operation to his assistant.

Despite residual headaches and some restriction of movement, Niedland for some time prior thereto had been able to attend his studio each day on a full time basis, to attend to all the details of managing it, to teach beginning pupils, and to train instructors in the less strenuous dance movements. Niedland failed to perform these duties and in so failing, he disregarded the advice of his physician, a reputable and outstanding doctor in the community. He employed a full time assistant who, as a practical matter, ran the business, enabling Niedland to spend a large part of his time away from his studio. He made no substantial attempt to minimize his damages. In the light of the advice of the doctors he was not justified in maintaining a full time assistant beyond the date of his discharge from the Delaware Curative Workshop and from that time he was entitled to maintain an assistant only for the purpose of having someone available to perform the more strenuous movements required in teaching advanced pupils, training instructors and giving exhibitions. Niedland did not adduce proof to enable the trial court to ascertain the reasonable cost of these limited services. At the time of the trial he had been advised by the defendant's doctors that he was in condition to resume the more violent forms of dancing in order to see if he was capable of executing them and that to attempt to do this would cause him no harm. While Niedland would not commit himself to the more violent forms of dancing, the record shows that nonetheless he engaged in some strenuous sport activities in the Spring and Summer of 1963.

Finding of fact "No. 25" is as follows: "Damages to plaintiff for pain and suffering from the date of the accident until recovered, for increased salary [sic] as the result of having to hire an assistant manager and for medical expenses, $9463.00."

The court made conclusions of law, pertinent to this appeal, as follows: "(2) Plaintiff, Arthur Niedland, incurred compensable injuries as the result of defendant's negligence;" "(3) As of the date of plaintiff's discharge from Delaware Curative Workshop, there was a complete failure of proof as to how any damages to plaintiff's business could be calculated flowing from the gradually decreasing residual pain and discomfort which plaintiff will suffer until complete recovery;" "(4) Plaintiff, Mr. Niedland, failed to minimize his damages;" "(5) Plaintiff, Mr. Niedland, is entitled to a judgment for money damages, for pain and suffering until complete recovery, for loss due to increased salary paid to an assistant and for medical expenses."

As has been indicated, at the trial evidence was offered by Niedland as to his need for an assistant. There was no objection to the receiving of this testimony when it was offered. Evidence was also offered by Niedland as to his physical condition, proving that he had suffered loss of earning power and was unable to transact his business. No objection was made by the defendant to the receiving of this evidence when it was offered. There was also testimony tending to prove that the loss of Niedland's earning power and his inability to carry on his business was temporary. Just prior to argument and after the

close of testimony in the case, the defendant's counsel stated that he objected to any argument respecting the cost of hiring an assistant manager or any argument as to the loss of earning power by Niedland because these items had not been specially pleaded. The court permitted the argument to proceed, nonetheless.

The court then entered judgment in favor of Niedland as indicated. Following that judgment the defendant moved, in the alternative, to amend the judgment or for a new trial, citing Rule 52 (b) and 59, Fed.R.Civ.Proc., 28 U.S.C. Two of the grounds of the motion were to mitigate the amount of the judgment in the defendant's favor. The third part of the motion was for a new trial. The motion was denied and the appeal at bar followed. The grounds of the appeal are in substance the same as those set out in the motion. We will discuss first the grounds for mitigation of damages and will then deal with the ground asserted for a new trial.

The government asserts that the court below erred in awarding damages for loss of earning power and for "loss due to increased salary paid to an assistant * * *" because the plaintiff failed to specifically plead these items of special damages in accordance with Rule 9(g) of the Federal Rules of Civil Procedure.[2] At the outset, it should be noted that both of these alleged errors relate to the same award. In its findings of fact the district court found that the plaintiff was justified in hiring a full-time assistant for the period beginning when the assistant was hired and ending upon Niedland's discharge from the Delaware

Curative Workshop. The court found that although upon that discharge Niedland became entitled to damages for a part-time assistant to assist in the more strenuous dance routines, he had failed to show how much these damages were. In the district court's conclusions of law, the damages awarded for the salary paid to the assistant clearly related only to that period designated in the findings of fact in which the district court found that Niedland was entitled to damages for a full-time assistant. In the district court's opinion denying the government's motion to amend the judgment, the court for the first time used the term "loss of earnings" and "loss of earning power."[3] This reference to loss of earnings could and can relate only to the salary paid to the assistant. To the extent that Niedland had to employ a competent person to assume his duties, his earnings were to that extent necessarily decreased. The limited period for which the district court found a loss of earnings related to the period commencing with the hiring of the assistant and ending upon Niedland's discharge from the Delaware Curative Workshop. See note 3, supra.

The position of the United States is that Niedland is precluded from recovering even this limited amount because he failed to specifically plead it as an item of special damage. It is clear that even under the more generalized notice pleadings of the Federal Civil Rules, special damages must be specifically pleaded. See note 2, supra. It is equally clear that expenditures for the hiring of a substitute are special damages, under both federal and state law.[4]

2. Rule 9(g) provides, "When items of special damage are claimed, they shall be specifically stated."

3. The district court said: "In the trial of this claim before the court without jury, a verdict which included * * * loss of earnings was returned. The defendant has now filed a motion to amend the judgment pursuant to Rule 52(b) for the reason that the court's award of damage for loss of earnings was not support-

ed by its findings of fact. This motion is denied. A close reading of these findings indicates that, although the court did not find that the loss of earnings covered a period as extensive as that claimed by the plaintiff, the court did find that, for a limited period, there had been a loss of earning power."

4. See Roberts v. Graham, 6 Wall. 578, 73 U.S. 578, 18 L.Ed. 791 (1867); Bullitt v. Delaware Bus Co., 7 W.W.Harr. 62, 37

■ Niedland did not specially plead loss of earnings or damages for the hiring of an assistant, but he did allege in paragraph 6 of the complaint that as a result of his injuries he "was prevented from transacting his business. * * * " We need not decide whether this allegation was sufficient under Rule 9(g), since this is not a case arising either by a pre-trial attack on the pleadings or an attack on the admissibility of evidence.[5] As we have stated, just prior to argument and after the close of testimony in the case, the defendant's counsel stated that he would object to any argument respecting the cost of hiring an assistant manager because this item had not been specially pleaded. The defendant did not assert that it was surprised, nor did it seek a continuance to present evidence in rebuttal. It is apparent, therefore, that a different standard should be applied under the circumstances at bar as will appear hereinafter.[6]

Niedland testified on direct examination and without objection by the United States that he was forced to hire an assistant, how much he paid that assistant and that his business could not afford two managers. On cross-examination, counsel for the United States questioned Niedland as to the need for an assistant and the rate of pay which should be allocated for the management duties that the assistant performed for Niedland. In the cross-examination of Niedland's medical witness and on direct-examination of the government's own medical experts, the United States made full inquiry as to the plaintiff's need for an assistant and the extent of that need. It is obvious that not only was there no objection to the introduction of this evidence, but the entire issue was vigorously litigated by the defendant. In fact, the government so well defended this claim that it succeeded in persuading the finder of fact that Niedland was not entitled to the full past and future damages that Niedland clearly claimed in the litigation and that he was entitled to claim loss of earnings only for a limited period of time.

In its brief to this court, the United States does not contend that it was surprised, but attempts to justify its failure to object to the evidence on the tactical ground that if it had "objected early in the trial at the slightest reference to the managerial tasks, the same would be admissible for pain and suffering and further the defense would have alerted plaintiff to the deficiency of his complaint for managerial damages which he may then have been able to cure at defendant's expense." [7] We find this argument unappealing and unpersuasive and not consonant with the general tenor of the Federal Rules of Civil Procedure or of the spirit of a modern trial in the federal courts. But it constitutes an admission by the United States that it preferred not to object to the admission of the evidence as to Niedland's need for an assistant for tactical reasons.

■ Rule 15(b) of the Federal Rules of Civil Procedure provides that "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." Under this rule, there is implied consent to litigate an issue if there is no objection to the introduction of evidence on the unpleaded issue, as long as the non-objecting party was fairly apprised that the evidence went to the unpleaded issue.[8] In Scott v. Baltimore

Del. 62, 180 A. 519 (Del.Super.1935); cf., Hobbs v. Carolina Coca-Cola Bottling Co., 194 S.C. 543, 10 S.E.2d 25 (1940).

5. Compare Hobbs v. Carolina Coca-Cola Bottling Co., 194 S.C. 543, 10 S.E.2d 25 (1940) and Stitt v. Lyon, 9 Terry 365, 48 Del. 365, 103 A.2d 332 (Del.Super.1954) and Varley v. Motyl, 139 Conn. 128, 90 A. 2d 869, 32 A.L.R.2d 1439 (1952); see

Form 9 of Illustrated Forms contained in Fed.Rules Civ.Proc.

6. Compare Great Am. Indem. Co. v. Brown, 307 F.2d 306 (5 Cir. 1962).

7. See appellant's brief at p. 30.

8. Psinakis v. Psinakis, 221 F.2d 418 (3 Cir. 1955); Freitag v. The Strand of Atlantic City, Inc., 205 F.2d 778, 781 (3 Cir. 1953); Venuto v. Robinson, 118 F.

& O. R. R.,[9] the defendant argued that the plaintiff was precluded from recovery because he failed to specifically plead the statute on which he relied. This court held that even assuming that the plaintiff changed his theory for recovery, the new theory was litigated at trial and under Rule 15(b) the plaintiff was entitled to recovery. In Zig Zag Spring Co. v. Comfort Spring Corp.,[10] it was held by this court that a failure to specifically plead punitive damages did not preclude recovery since the plaintiff made it clear at the trial that punitive damages was his theory of recovery. These authorities make it abundantly clear that a litigant cannot, for tactical purposes, stand by silently while evidence is being admitted and then claim later that no relief can be given because the matter was not plead. In this case it would be even more unfair to rigorously apply Rule 9(g) since the defendant not only stood silently by when the evidence was offered on behalf of the plaintiff but also vigorously defended on this issue and, in fact, was victorious on the greater portion of the damages that were claimed at trial.

The defendant points to our recent decision in Kline v. S. M. Flickinger Co.[11] for the proposition that the trial court should have either excluded consideration of the evidence on this issue or granted defendant time to meet it. In that case the plaintiffs introduced an additional item of negligence and there was no objection to the admission of this evidence. However, near the end of the defendant's case, the defendant moved to strike the evidence. Upon hearing the motion, the district court, holding that the defendant would be prejudiced if it was not granted a continuance, gave the plaintiffs the choice of proceeding with the case in its original posture or allowing the defendant time to meet the new evidence. The plaintiffs chose to proceed with the case in its original posture and this court affirmed the district court, holding that the plaintiffs could not later complain because the new material was excluded from consideration.

However, the case at bar is distinguishable from that case. Rule 15 (b) provides two very different routes for amendment to conform to the issues. One route is where the issues are tried by express or implied consent of the parties. In this case we have found implied consent. The other route is where evidence is objected to on the ground that it is "not within the issues made by the pleadings." If objection is made, the court may allow amendment to the pleadings "and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that admission of such evidence would prejudice him in maintaining his action or defense upon the merits." The court may also grant a continuance to allow the objecting party time to meet the evidence. In Kline v. S. M. Flickinger Co., the motion to strike was deemed to be timely made, thus the second route under 15(b) was utilized. The trial judge determined that the defendant would be prejudiced unless it was given time to meet the evidence. In the case at bar, however, there was no objection or motion to strike and thus this second route was not utilized by the defendant.

We find the defendant's contentions upon this aspect of the case to be without

2d 679, 683 (3 Cir. 1941); Shapiro v. Yellow Cab Co., 79 F.Supp. 348 (E.D. Pa.1948); 3 Moore, Federal Practice 846–47 (2d ed. 1963).

Even under the stringent rules of common law pleading it was held that failure to object to the admission of evidence precluded the defendant from arguing later that the evidence was not admissible because the damages to which it was relevant were not specially pleaded. See Roberts v. Graham, 6 Wall. 578, 73 U.S. 578, 18 L.Ed. 791 (1867). The Supreme Court added, in dictum however, that had objection been made the plaintiff would have been allowed to amend.

9. 151 F.2d 61 (3 Cir. 1945).

10. 200 F.2d 901 (3 Cir. 1953).

11. 314 F.2d 464 (3 Cir. 1963).

merit and it follows that the judgment should not be reduced.

■ The defendant's grounds for a new trial are as follows: After the entry of judgment the United States filed affidavits executed by four persons claiming, in substance, that Niedland had deliberately misled the court in that he alleged that his injuries were more extensive than they were in fact.

The material contained in the affidavits is of the nature of after-discovered evidence as the trial court pointed out. All the affiants were former employees of Niedland's, living in Wilmington at the time of the trial and prior thereto. An examination of Niedland on oral discovery would have revealed the names of at least some of the affiants whose evidence is now sought to be produced. We find, as did the court below, that this evidence could have been discovered if due diligence had been exercised by the United States. See Gibson v. International Freighting Corp., 173 F.2d 591 (3 Cir. 1949), cert. denied 338 U.S. 832, 70 S.Ct. 78, 94 L.Ed. 507 (1949). The government lays emphasis on Ferrell v. Trailmobile, Inc., 223 F.2d 697 (1955), in which the Court of Appeals for the Fifth Circuit reversed a judgment against the appellant despite his lack of diligence in failing to produce photostatic copies of three deposited money orders at trial. The Court of Appeals in the cited case concluded that not to reverse the judgment would result in a grave miscarriage of justice.

The circumstances of the Ferrell case, however, are not analogous to those at bar, for, here, as the court below pointed out, the accuracy of the affiants' knowledge, whether they are prejudiced, and whether they would or would not be convincing witnesses, "raises only a doubt, although perhaps a disturbing doubt," that there may have been a miscarriage of justice in the instant case. In the Ferrell case, there was no doubt that there had been a miscarriage of justice. The newly-discovered evidence in that case was conclusive. Under the circum-

stances at bar, we cannot say that the trial judge abused his discretion.

Other points raised by the parties do not require discussion.

The judgment of the court below will be affirmed.